Miguel Angel ITURRIBARRIA,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 02–70003.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 2002.

Filed March 4, 2003.

Edgardo Quintanilla and Anna Luisa Padilla, Sherman Oaks, CA, for the petitioner-appellant.

Anthony C. Payne and Cindy S. Ferrier, Attorneys, Office of Immigration Litigation, Civil Division. United States Department of Justice, Washington, D.C., for the respondent-appellee.

Before CANBY, GOULD and BERZON, Circuit Judges.

## OPINION

BERZON, Circuit Judge:

Miguel Angel Iturribarria petitions this court for review of the Board of Immigration Appeals' (BIA) denial as untimely of his motion to reopen deportation proceedings, so as to permit the filing of an application for suspension of deportation under former Immigration and Nationality Act (INA) § 244. He alleges that the BIA violated due process by deeming his motion to reopen a motion to reconsider, in violation of applicable Immigration and Naturalization Service (INS) regulations. Mr. Iturribarria further alleges that his former counsel was ineffective, and that he is therefore entitled to equitable tolling sufficient to convert his untimely motion to reopen into a timely one.

We agree with Mr. Iturribarria that the BIA misapplied its own regulations when it classified his motion alleging ineffective assistance of counsel as a motion to reconsider rather than a motion to reopen. Where the facts surrounding allegedly ineffective representation by counsel were unavailable to the petitioner at an earlier stage of the administrative process, motions before the BIA based on claims of ineffective assistance of counsel are properly deemed motions to reopen. By misapplying its regulations to incorrectly categorize Mr. Iturribarria's motion, the BIA abused its discretion.

We also agree that, if his first attorney acted fraudulently as Mr. Iturribarria asserts, then he is entitled to equitable tolling to convert his untimely motion to reopen into a timely one. We further conclude that, if Mr. Iturribarria were to establish at a hearing that his assertions concerning his attorney's conduct are true, then his former counsel's performance was so ineffective that it denied him due process in previous proceedings. We find that any such alleged ineffective performance did not, however, prejudice Mr. Iturribarria's claim for suspension of deportation, and therefore we deny his petition for review.

## BACKGROUND

Mr. Iturribarria is a Mexican citizen who currently lives in Mission Hills, California with his wife and their three United States citizen children. On May 1, 1988, Mr. Iturribarria entered the United States without inspection at the San Ysidro, California port of entry. He moved to the Los Angeles area and found work as a restaurant cook. On January 24, 1997, the INS served Mr. Iturribarria with an Order to Show Cause (OSC), stating that he was subject to deportation.

At the time he received the OSC, Mr. Iturribarria was employed as a cook at Tacos Tacos, a Los Angeles restaurant. There he met Phyllis Colman, an attorney whose office was located nearby; Ms. Colman came to the restaurant to eat about once a week. After receiving the OSC, Mr. Iturribarria retained Ms. Colman to represent him in deportation proceedings before the Immigration Court.

At the deportation hearing on April 23, 1997, Ms. Colman requested a continuance to gather information in support of Mr. Iturribarria's asylum and withholding of deportation claims and to prepare an application for suspension of deportation. The Immigration Judge (IJ) granted a continuance until March 12, 1998, taking pains to inform both Ms. Colman and Mr. Iturribarria that the application for suspension of deportation must be filed by December 12, 1997. The IJ further warned that if the application for suspension of deportation were not timely filed, it would be deemed abandoned.

Neither Ms. Colman nor Mr. Iturribarria filed an application for suspension of deportation on or before December 12, 1997. In the continued hearing on March 12, 1998, Ms. Colman withdrew Mr. Iturribarria's application for asylum and withholding of deportation and submitted an application for cancellation of removal. When the IJ questioned Ms. Colman about her failure to timely file an application for suspension of deportation, Ms. Colman stated: "[M]y client had difficulty in securing documents in support of the application ... [W]e didn't have the sufficient information in order to complete the application on time." When the IJ questioned Mr. Iturribarria about the lapse, he responded: "I did not have the papers on time. I had to request them from Mexico."

The IJ deemed the application for suspension of deportation abandoned, noting that the reasonable deadline for filing for suspension of deportation had not been met; that the application that had been turned in by Ms. Colman that day was one for cancellation of removal, not suspension of deportation; and that Mr. Iturribarria's fingerprints had never been submitted so that the INS could perform a background check. The IJ also declined to grant Mr. Iturribarria voluntary departure, citing two incidents involving police contact as preclusive of the requisite finding of good moral character. Mr. Iturribarria maintained, however, that he had never been arrested, jailed, fined, or convicted of criminal activity.

Still represented by Ms. Colman, Mr. Iturribarria timely appealed to the BIA. Ms. Colman's brief asked that the failure to file a timely application for suspension of deportation be forgiven, assigning sole responsibility to Mr. Iturribarria: "Unfortunately, family and employment duties were such that he simply forgot to abide by the deadline of the IJ and assist his attorney in preparing the requisite application on a timely basis." The brief was accompanied by an affidavit by Mr. Iturribarria, which stated, in pertinent part:

On or about August 1997 I changed my home telephone number. In addition, my employment changed in November 1997 and the business closed. Regarding both of these changes, I forgot to advise my attorney, Phyllis R. Colman, of my new home and employment telephone numbers.... My attorney advised me to secure documents in support of the application for suspension of deportation on April 23, 1997, and at several later dates and to come to her office on November 12, 1997. I failed to appear for the appointment with my attorney simply because I have worked six days a week, full-time, and my wife and I have three young children, now aged

six, four and one year old. Unfortunately, my work and family responsibilities were such that I simply forgot to contact my attorney and timely prepare the required application, with the supporting documents.

The affidavit contained no indication that it had been translated to enable Mr. Iturribarria, who is not fluent in English, to read it in Spanish, his native language, before signing it.

The BIA rejected Mr. Iturribarria's appeal in an October 5, 2000 decision:

To the extent that his attention to the time schedule set by the Immigration Judge was undermined by the normal responsibilities of his daily life, he has not established reasonable cause for failing to abide by the schedule set by the Immigration Judge. Moreover, he was represented by counsel during the course of his proceedings before the Immigration Judge but neglected to remain in contact with his counsel. In sum, the excuse provided by the respondent for not properly pursuing his application for suspension of deportation is not good enough.

A majority of the BIA panel did reverse the IJ's refusal to grant voluntary departure, finding that "a preponderance of the evidence does not establish that the respondent is statutorily precluded from the privilege of voluntary departure. Moreover, there is no proof that the respondent was convicted of a serious crime which would weigh against a favorable exercise of discretion."

On October 11, 2000, Ms. Colman sent a letter to Mr. Iturribarria stating that he had lost the appeal and had to leave the country by the date designated by the BIA. The letter also told Mr. Iturribarria that he would probably not prevail should he choose to appeal the decision to the Ninth Circuit.

At that point, Mr. Iturribarria contacted his present counsel for advice. Present counsel requested a copy of Mr. Iturribarria's file from Ms. Colman and received it on October 19, 2000. On January 11, 2001, present counsel filed a motion to reopen before the BIA, alleging that ineffective assistance by Ms. Colman had denied Mr. Iturribarria due process in his deportation proceedings.

The motion argued that because "new evidence is available that was not available and could not have been discovered or presented" before the due dates of the application for suspension of deportation and the BIA appeal, and because "Respondent has established a *prima facie* eligibility for the relief of Suspension of Deportation," Mr. Iturribarria's case should be reopened to enable him to apply for suspension of deportation. The motion further stated that, under *Lopez v. INS,* 184 F.3d 1097 (9th Cir.1999), the time limit for filing a motion to reopen should be equitably tolled. Ms. Colman had misled Mr. Iturribarria, the motion contended, and Mr. Iturribarria did not become aware of the deception until after his present counsel reviewed his file with him on November 1, 2000.

In support of this motion, Mr. Iturribarria attached two affidavits. One stated that because he had known Ms. Colman for a few years before she began representing him, he trusted her to do a good job on his behalf even after the deportation hearing in which he learned she had not filed the application for suspension of deportation. The other recited that Ms. Colman did not request any documentation in support of Mr. Iturribarria's case until early 1998, and that he had complied with that request. Both affidavits declared that Ms. Colman asked Mr. Iturribarria to sign a number of documents in English, including the affidavit in support of the appeal to

the BIA, and that, because these documents were never translated or explained to Mr. Iturribarria in Spanish, he did not know what he was signing. In one of the affidavits, Mr. Iturribarria stated that he had not changed his residential address since retaining Ms. Colman as an attorney and, furthermore, that she knew how to get in touch with him because she knew where he worked.

On December 3, 2001, the BIA denied the motion to reopen as untimely filed, characterizing Mr. Iturribarria's motion to reopen as "more properly a motion to reconsider." The opinion explained:

> A motion to reopen is made when the factual circumstances relating to the underlying decision have changed, and that change can be shown with previously unavailable evidence. A motion to reconsider "questions the Board's decision for alleged errors in appraising the facts and the law.... When [the Board] reconsiders a decision, we are in effect placing ourselves back in time and considering the case as though a decision in the case on the record before us had never been entered."

(quoting *Matter of Cerna*, 20 I. & N. Dec. 399, 402(BIA 1991) (internal citation omitted)). The BIA's opinion did not explain in what way Mr. Iturribarria's motion "question[ed] the Board's decision for alleged errors in appraising the facts and the law."

As a motion to reconsider, Mr. Iturribarria's motion was due within 30 days of the BIA's decision on his appeal—that is, on or before November 6, 2000. The BIA declined to apply equitable tolling to the deadline. *Lopez* did not apply, declared the BIA, because "the claims that the respondent makes are not directed against an individual posing as an attorney." The BIA also held that because current counsel received Mr. Iturribarria's file on October

19, 2000, there was sufficient time to file a motion to reconsider before the deadline. The BIA commented, finally, that even if it were to reach the merits of the motion to reconsider, Mr. Iturribarria's ineffective assistance of counsel claims would fail because he had not shown prejudice:

> The respondent's statement of his suspension claim is weak. The respondent alleged that his deportation would cause hardship to his three citizen children .... However, the respondent failed in his motion to allege any hardships that could be fairly characterized as "extreme."

Mr. Iturribarria petitions this court for review of the BIA's decision.

## ANALYSIS

 Proceedings in this case commenced prior to April 1, 1997. We therefore have jurisdiction to review a BIA denial of a motion to reopen pursuant to 8 U.S.C. § 1005a(a) (1997), as modified by the transitional rules for judicial review set forth in § 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* Pub.L. No. 104–208, 110 Stat. 3009, 625–26 (Sept. 30, 1996). This court reviews BIA denials of motions to reopen for abuse of discretion, *Ontiveros–Lopez v. INS*, 213 F.3d 1121, 1124 (9th Cir.2000), but reviews purely legal questions, such as due process claims, de novo. *See Lopez*, 184 F.3d at 1099.

### A. *Motion to Reopen or Motion to Reconsider?*

Mr. Iturribarria contends that the BIA violated due process in applying the regulations governing motions to reopen and motions to reconsider. Specifically, he argues that his motion based on alleged ineffective assistance of counsel should have been construed under relevant regulations as a motion to reopen rather than a motion

to reconsider. If it were, it would have been due within 90 days rather than 30 days after the BIA's decision. *See* 8 C.F.R. § 3.2.

We decline to decide cases on constitutional grounds when other grounds on which to base our decision are available. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (federal courts must avoid unnecessarily deciding constitutional questions). The BIA abuses its discretion when it fails to comply with its own regulations. *See Mejia v. Ashcroft,* 298 F.3d 873, 878 (9th Cir.2002) ("The BIA does not have the discretion to misapply the law, and it abuses its discretion when it does."); *Andriasian v. INS,* 180 F.3d 1033, 1046 (9th Cir.1999) ("It is the failure to abide by its own regulations that renders the BIA's decision 'contrary to law' ... and therefore an abuse of discretion." (internal citation omitted)). Accordingly, if the BIA did misapply its regulations as Mr. Iturribarria alleges, we can reverse on abuse of discretion grounds and avoid any constitutional determination. We therefore look at the governing BIA regulations directly, rather than through the due process prism.

The regulations governing and distinguishing motions to reopen and reconsider read in relevant part:

(b) Motion to reconsider

(1) A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority.

[. . . .]

(2) A motion to reconsider a decision must be filed with the Board within 30 days after the mailing of the Board decision or on or before July 31, 1996, whichever is later. [ ... ]

(c) Motion to reopen

(1) [ ... ] A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing [ ... ]

(2) [ ... ] a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later.

8 C.F.R. § 3.2.

■ Under the plain language of 8 C.F.R. § 3.2(b)(1), a motion to reconsider challenges determinations of law and fact made by the BIA. The only supporting materials required for a motion to reconsider are a statement of the party's arguments regarding the BIA's alleged errors and "pertinent authority." It is implicit in subsection (b)(1) that the BIA will reconsider the party's case using the same record evidence used in making its prior decision. In contrast, a motion to reopen may only be granted upon a proffer of material evidence that "was not available and could not have been discovered or presented at the former hearing."

■ Mr. Iturribarria's motion does not contend that the BIA made any legal errors in deciding the appeal filed by Ms. Colman. Rather, it introduces new evidence—evidence of alleged ineffective assistance of counsel—that was not discovered until after Ms. Colman represented Mr. Iturribarria on appeal. The full extent of this evidence was not as a practical matter discoverable until Mr. Iturribarria reviewed his case file with new counsel. Mr. Iturribarria's motion therefore fits within

the requirements for a motion to reopen, as set forth in 8 C.F.R. § 3.2(c).

Our case law subscribes to this interpretation of the regulations. In *Socop–Gonzalez v. INS*, 272 F.3d 1176(9th Cir.2001) (en banc), this court explained: "The purpose of a motion to reopen is to present new facts or evidence that would entitle the alien to relief from deportation." *Id.* at 1180. In contrast, "[t]he purpose of a motion to reconsider is not to raise *new* facts, but rather to demonstrate that the IJ or the BIA erred as a matter of law or fact." *Id.* at 1180 n. 2 (emphasis in original). Accordingly, the *Socop–Gonzalez* court analyzed a motion based on the petitioner's recent discovery that INS personnel had given him incorrect instructions under the rules governing motions to reopen. *See id.* at 1190–93. *See also Chung v. INS*, 720 F.2d 1471, 1474 n. 2 (9th Cir.1983); *Chudshevid v. INS*, 641 F.2d 780, 784 (9th Cir.1981).

The BIA itself has provided a seemingly clear statement consistent with our understanding of the scope of a motion to reopen. In *Cerna*, 20 I. & N. Dec. at 400, the BIA held that a motion "seek[ing] the opportunity to submit evidence that was not previously a matter of record" was appropriately classified as a motion to reopen. In a footnote, the BIA explained that a motion to reconsider " 'is a request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked, while [a] motion to reopen is usually based upon new evidence or a change in factual circumstances.' " *Id.* at 402 n. 2 (quoting Hurwitz, *Motions Practice Before the Board of Immigration Appeals*, 20 San Diego L.Rev. 79, 90 (1982)).

Despite the direction of its own regulations and explications such as that in *Cerna*, the BIA's categorization of motions based on ineffective assistance of counsel has been inconsistent at best. *Compare Matter of Patino*, 23 I. & N. Dec. 74 (BIA 2001) (considering a motion challenging validity of waiver based on ineffective assistance of counsel a motion to reconsider) *with Matter of A–A*, 22 I. & N. Dec. 140 (BIA 1998) *and Matter of Lei*, 22 I. & N. Dec. 113 (BIA 1998) (both applying filing deadline for motion to reopen to motion alleging ineffective assistance of counsel) *and Matter of N–K & V–S*, 21 I. & N. Dec. 879 (BIA 1997) (granting motion to reopen based on ineffective assistance of counsel claim). The majority of BIA opinions published in recent years have reviewed motions to reopen involving ineffective assistance of counsel claims *without* reclassifying these motions as motions to reconsider. *See, e.g., Matter of Cruz–Garcia*, 22 I. & N. Dec. 1155 (BIA 1999); *Matter of B–B*, 22 I. & N. Dec. 309 (BIA 1998); *Matter of Rivera–Claros*, 21 I. & N. Dec. 599 (BIA 1996); *Matter of Grijalva–Barrera*, 21 I. & N. Dec. 472 (BIA 1996). The BIA's characterization of Mr. Iturribarria's ineffective assistance motion as a motion to reconsider therefore conflicts with its usual treatment of these motions.

Indeed, as a practical matter, a motion to reopen is the only avenue ordinarily available to pursue ineffective assistance of counsel claims. In the criminal habeas context, this court has recognized that ineffective assistance of counsel claims "are ordinarily left for collateral habeas proceedings due to the lack of a sufficient evidentiary record as to 'what counsel did, why it was done, and what, if any, prejudice resulted.' " *United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir.2000) (quoting *United States v. Quintero–Barraza*, 78 F.3d 1344, 1347 (9th Cir.1995)). Similarly, when an alien alleges that former counsel was constitutionally ineffective, a motion to

reopen, like a collateral criminal proceeding, is the means by which he may introduce new evidence regarding his former counsel's performance.

Consistent with this analysis, this court and other circuits have treated motions based on ineffective assistance of counsel claims as motions to reopen. *See Varela v. INS,* 204 F.3d 1237, 1239 n. 4 (9th Cir. 2000) (motion alleging ineffective assistance of counsel was "properly treated as . . . a motion to reopen," because petitioner sought to introduce new facts not already in evidence pertaining to counsel's ineffective performance); *Zhao v. United States Dep't of Justice,* 265 F.3d 83, 90 (2d Cir.2001) (where alien's motion "included new evidence and asked for relief because 'proper documentation of a critical aspect of the applicant's claim[was not] made'" by counsel, it was properly classified by BIA as a motion to reopen); *Lopez,* 184 F.3d at 1100 (treating motion as one to reopen where petitioner made ineffective assistance of counsel claim based on performance of a notary posing as a lawyer); *Henry v. INS,* 8 F.3d 426, 438–40 (7th Cir.1993) (deeming alien's motion based on ineffective assistance of counsel a motion to reopen).

The INS argues that Mr. Iturribarria knew or should have known about counsel's alleged ineffectiveness at earlier stages of his deportation proceedings, so his motion is not based on new evidence and, as such, cannot be classified as a motion to reopen. Mr. Iturribarria, however, maintains otherwise. He argues that his new evidence meets the newly discovered evidence standard, because he could not meaningfully evaluate his lawyer's alleged fraudulent misrepresentations and ineffectiveness until he evaluated his file with a new lawyer. Whether Mr. Iturribarria is correct in that regard is an issue to be determined on the merits of the motion to reopen. That merits question is not a basis for converting the motion to reopen into something it certainly was not, namely, a motion to reconsider the case on the basis of the existing record. Thus, because Mr. Iturribarria's motion is based on new evidence that was purportedly not discoverable at an earlier stage, the BIA was obligated, under its regulations and our case law, to treat it as a motion to reopen for the purposes of the limitations period, although not necessarily as a meritorious one.

In sum, under the plain language of the pertinent regulations and this court's case law, Mr. Iturribarria's motion is properly deemed a motion to reopen. We therefore hold that the BIA abused its discretion when it misapplied its regulations to classify Mr. Iturribarria's motion as a motion to reconsider.

## B. *Equitable Tolling*

The INS argues that the question whether Mr. Iturribarria's motion is considered a motion to reconsider or a motion to reopen is immaterial, as he missed the deadlines for filing both motions. The INS reasons as follows: The BIA issued its final administrative decision on October 5, 2000 and Mr. Iturribarria's motion was filed 96 days later, on January 11, 2001. The motion was therefore six days too late if it was a motion to reopen and 66 days too late if it was a motion to reconsider.

■ This court, however, recognizes equitable tolling of deadlines and numerical limits on motions to reopen or reconsider during periods when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error. *See, e.g., Rodriguez–Lariz v. INS,* 282 F.3d 1218(9th Cir.2002); *Socop–Gonzalez,* 272 F.3d 1176; *Lopez,* 184 F.3d 1097. Equitable tolling

does not, as the INS posits, apply only in ineffective assistance of counsel cases involving individuals posing as attorneys. Where the ineffective performance was that of an actual attorney and the attorney engaged in fraudulent activity causing an essential action in her client's case to be undertaken ineffectively, out of time, or not at all, equitable tolling is available. *See generally Rodriguez–Lariz*, 282 F.3d at 1223–26 (equitably tolling numerical limits on motions to reopen because of fraudulent activity by attorneys).

■ Mr. Iturribarria contends that Ms. Colman failed to tell him in advance which documents were needed, failed timely to file an application for suspension of deportation on his behalf, filed the wrong motion for relief, and then executed a false affidavit blaming him for the untimeliness. He further alleges that he did not know the contents of the affidavit when it was submitted to the BIA as it was never translated into or explained to him in Spanish. Maintaining that he did not learn and could not have learned of Ms. Colman's allegedly deceptive acts until he reviewed his file with new counsel on November 1, 2000, Mr. Iturribarria asserts that the ninety day period for filing motions to reopen should not have begun to run until then. If the deadline were so tolled, the operative deadline by which the motion to reopen must have been filed would be January 30, 2001, well after Mr. Iturribarria filed his motion to reopen on January 11, 2001.

The facts asserted by Mr. Iturribarria closely parallel those in *Rodriguez–Lariz v. INS.* In *Rodriguez–Lariz*, the petitioners paid two lawyers and an immigration specialist to file an application for suspension of deportation on their behalf. 282

F.3d at 1221–22. As in Mr. Iturribarria's case, the IJ in *Rodriguez–Lariz* set a firm deadline by which the application for suspension of deportation had to be filed and warned petitioners and their counsel of the consequences of an untimely motion. *Id.* at 1221. Petitioners' representatives did not file the motion by the deadline. They told petitioners that the motion had been timely filed and that the IJ had simply lost the motions. *Id.* The representatives also assured the petitioners that an appeal would solve their problems and charged additional fees to represent petitioners in an appeal and motion to reopen before the BIA. *Id.* at 1221–22. Because the representatives had not timely filed the application for suspension of deportation and did not admit any culpability as ineffective counsel, the subsequent appeals were useless. Petitioners' one opportunity for a motion to reopen was wasted. *Id.* at 1224–25.[1] We held in *Rodriguez–Lariz* that this kind of ineffective representation, combined with deceptive behavior that misled petitioners into believing that their representatives were proceeding effectively and appropriately, justified equitable tolling of the 8 C.F.R. § 3.2 numerical limits on motions to reopen.

*Rodriguez–Lariz* directs our analysis here. Like the petitioners in *Rodriguez–Lariz*, Mr. Iturribarria asserts that his counsel did not timely file his application for suspension of deportation, eventually filed the wrong application, and then attempted to cover up her malfeasance by filing a useless appeal and lying. Mr. Iturribarria's case thus alleges the same high degree of attorney malfeasance that triggered equitable tolling in *Rodriguez–Lariz*.

---

1. The regulations limit petitioners to one motion to reopen before the BIA. *See* 8 C.F.R. § 3.2.

The INS counters that, even if Ms. Colman's actions were sufficiently fraudulent to trigger equitable tolling, Mr. Iturribarria knew or should have known of her alleged deceptive activities well before his November 1, 2000, meeting with his current counsel. The INS thus maintains that because Mr. Iturribarria did not act with due diligence when he knew or should have known of Ms. Colman's alleged deception, he is not entitled to equitable tolling.

Here again, *Rodriguez–Lariz* guides our analysis. We held in *Rodriguez–Lariz* that petitioners did not lack diligence because they relied on representatives who turned out to be unscrupulous liars:

> The INS' suggestion that petitioners, who were in an extremely vulnerable position as the subjects of pending deportation proceedings, should be considered to have lost their rights because they were beguiled by [a representative's] assurances, contradicts the very basis for providing equitable relief. Petitioners were unfamiliar with the INS' administrative process and relied on [their representative] to protect their interests.

282 F.3d at 1225.

Similarly, Mr. Iturribarria understandably relied on Ms. Colman to guide him through INS proceedings. After the BIA's denial of his appeal, Mr. Iturribarria promptly retained new counsel, and obtained his file from Ms. Colman. Less than one month elapsed from the denial of the appeal to the date Mr. Iturribarria learned of Ms. Colman's allegedly fraudulent and ineffective activities.

We therefore conclude that the BIA erred in ruling that Mr. Iturribarria's assertions, if proved to be true, would not

entitle him to equitable tolling. If the asserted facts were established, the ninety-day limitation period provided by 8 C.F.R. § 3.2 did not begin running until November 1, 2000, the day Mr. Iturribarria met with his new counsel to discuss his file and first became aware of Ms. Colman's alleged fraud. *Cf. Socop–Gonzalez*, 272 F.3d at 1194–97(tolling the limitations period until the date that INS error was discovered, or with due diligence, should have been discovered).[2] Under this schedule, the motion to reopen was not due until January 30, 2001, and thus Mr. Iturribarria's motion to reopen filed on January 11, 2001 would be timely.

### C. *Ineffective Assistance of Counsel*

As an alternate ground for denying Mr. Iturribarria's motion to reopen, the BIA determined that Mr. Iturribarria could not prevail on the merits because he could not show that his case was prejudiced by counsel's purportedly ineffective assistance.

In deportation proceedings, an alien's right to be represented by counsel is based on the due process guarantees of the Fifth Amendment. *See Magallanes–Damian v. INS*, 783 F.2d 931, 933 (9th Cir.1986) (right to counsel in deportation proceedings is a Fifth Amendment right). Accordingly, ineffective assistance of counsel in a deportation hearing results in a denial of due process under the Fifth Amendment only when the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting her case. *Rodriguez–Lariz*, 282 F.3d at 1226. To show a deprivation of due process caused by ineffective assistance of counsel, the alien must show that counsel's ineffective performance prejudiced her. *Id.* Prejudice results when "the performance of

**2.** Even if the deadline were tolled only until October 19, the day Mr. Iturribarria's new lawyer was able to obtain the file from Ms. Colman, the petition would be timely.

counsel was so inadequate that it may have affected the outcome of the proceedings." *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir.1999).

■■■ Before making an ineffective assistance of counsel claim, an alien generally must comply with procedural requirements established by the BIA in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988) and adopted by this court. *See Ontiveros–Lopez*, 213 F.3d at 1123(applying *Lozada* to court's review of BIA denial of alien's motion to reopen). Under the *Lozada* rules, the party alleging ineffective assistance must 1) submit an affidavit explaining his agreement with former counsel regarding his legal representation, 2) present evidence that prior counsel has been informed of the allegations against her and given an opportunity to respond, 3) either show that a complaint against prior counsel was filed with the proper disciplinary authorities or explain why no such complaint was filed. *Id.*

■■■ Mr. Iturribarria complied with the *Lozada* requirements when filing his motion to reopen. He submitted with his motion an affidavit explaining how he came to retain Ms. Colman as his counsel for deportation proceedings and his appeal, as well as a copy of his contract for legal services with Ms. Colman. In addition, he filed a complaint against Ms. Colman with the State Bar of California and sent a copy of the complaint to Ms. Colman, accompanied by a letter of explanation. Thus, this court may examine the merits of Mr. Iturribarria's ineffective assistance claim.

1. *Counsel's Performance*

The record and transcript of Mr. Iturribarria's continued deportation hearing be-

fore the IJ reveal that Ms. Colman failed to file the suspension of deportation application by December 12, 1997, the date mandated by the IJ. Moreover, Ms. Colman attempted to submit an application for cancellation of removal—the wrong application—at Mr. Iturribarria's March 12, 1998 hearing. This court has determined that counsel's failure to file necessary papers in immigration proceedings may constitute ineffective assistance of counsel. *See, e.g., Castillo–Perez v. INS*, 212 F.3d 518, 526–27(9th Cir.2000) and *Rodriguez–Lariz*, 282 F.3d at 1226 (due process violated when aliens' lawyers, without reason, failed to timely file application for suspension of deportation).

At the deportation hearing, Ms. Colman explained that the failure to file the application for suspension of deportation was due to difficulty in securing information and supporting documents to complete the application. But Mr. Iturribarria alleges that he was not told by Ms. Colman that he had to begin gathering documentation for his motion to suspend deportation until January, 1998, *after* the deadline for filing the motion to suspend deportation had passed. Furthermore, there is no evidence that Ms. Colman's decision to submit an application for cancellation of removal was in any way strategic. It appears to have been a mistake, or a useless show of effort at the last minute.[3]

Of course, the IJ warned both Mr. Iturribarria and Ms. Colman about the December 12, 1997 due date for the application for suspension of deportation and its significance. Mr. Iturribarria may reasonably be expected to be informed about his own immigration case. But it was reasonable for Mr. Iturribarria to assume that Ms. Colman, his paid representative, would

---

**3.** The Motion for Cancellation of Removal was filed on March 11, 1998, the day before the hearing.

timely file critical motions in his case and advise him about what kind of information was needed in time for him to gather it. One reason that aliens like Mr. Iturribarria retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration proceedings so complicated. Mr. Iturribarria cannot be precluded from demonstrating ineffective assistance of counsel because he reasonably relied upon and assumed his counsel's competence. *See generally Rodriguez–Lariz*, 282 F.3d at 1225–27.

Mr. Iturribarria also presents specific evidence concerning why he was precluded from fairly presenting his case by Ms. Colman's alleged actions. Mr. Iturribarria asserts that the affidavit Ms. Colman prepared for him to sign is false and misleading in several respects. First, as noted, he maintains that he was not told to gather documentation in support of his application for suspension of deportation until January, 1998, yet the affidavit states: "My attorney advised me to secure documents in support of the application for suspension of deportation on April 23, 1997, and at several later dates." Although Mr. Iturribarria knew that he had to file an application for suspension of deportation by December 12, 1997, he presumably did not know what that entailed. It is not surprising that he would not gather supporting information until Ms. Colman told him to do so and explained what kind of material he needed to gather. Viewed in that light, Mr. Iturribarria's statement at the hearing, "I did not have the papers on time. I had to request them from Mexico," is consistent with his later affidavit that he failed to gather materials in support of his suspension of deportation application on time because he was advised too late as to what materials he needed to assemble.

Second, although Mr. Iturribarria does not contest the statement in the affidavit that he changed his phone number without notifying Ms. Colman, he presents evidence that she had other ways to contact him prior to his hearing. Mr. Iturribarria's home address has not changed since early 1996, so Ms. Colman could have reached him by sending mail to that address. Although Mr. Iturribarria changed jobs in November 1997, when Tacos Tacos closed down, until that point Ms. Colman knew she could reach him in person there.

Mr. Iturribarria also states that he is not fluent in English and, because the affidavit was never translated into Spanish for him, he did not understand what he was signing. There is no translator's seal or other indication that the affidavit Ms. Colman prepared was translated into Spanish or otherwise explained to Mr. Iturribarria in his native language. It is therefore plausible on the current record that Mr. Iturribarria signed the purportedly false and misleading affidavit without having full knowledge of its contents. Yet the brief and affidavit Ms. Colman prepared for Mr. Iturribarria's appeal blame him entirely for the missed deadline, ignoring the fact that he paid her $3,000 to prepare and file a motion for suspension of deportation in his case.

If the several troubling aspects of Ms. Colman's representation asserted by Mr. Iturribarria were demonstrated to be true, Mr. Iturribarria would have a sufficiently viable claim that Ms. Colman's assistance was ineffective in his case as to require reopening if he could show prejudice.

### 2. *Prejudice*

We cannot grant Mr. Iturribarria's petition, however, unless he can demonstrate that Ms. Colman's allegedly deficient representation prejudiced his case. *See Rodriguez–Lariz*, 282 F.3d at 1226.

Under former § 244 of the Immigration and Nationality Act, the Attorney General could, in his or her discretion, grant suspension of deportation to an alien who 1) has been physically present in the United States for the preceding seven years; 2) was, in the opinion of the Attorney General, a person of good moral character for the preceding seven years; and 3) can demonstrate that deportation would pose extreme hardship to the alien or his U.S. citizen (or legal permanent resident) spouse, children, or parents. 8 U.S.C. § 1254(a)(1) (1997) (now repealed).

In the record before this court, Mr. Iturribarria has assembled convincing evidence of seven years' continuous residence in the United States, in the form of numerous affidavits by persons who knew him in Los Angeles as far back as 1991. He also offered letters mailed to his family in Mexico (the postmarks of these letters indicate they were sent from Los Angeles in 1988), and myriad receipts and tax returns indicating his presence in the United States throughout the early and mid–1990s.

As for the statutory requirement of good moral character, Mr. Iturribarria maintains that he has never been arrested, jailed, fined, or convicted of a crime. During Mr. Iturribarria's deportation proceedings, the IJ and INS inquired into alleged encounters with the police. The portion of the transcript pertaining to that inquiry is extremely confusing. We need not decide whether Mr. Iturribarria can establish good moral character for the purposes of suspension of deportation, because the BIA did not abuse its discretion in holding that he made an insufficient showing that his deportation would pose extreme hardship to himself, or his U.S. citizen spouse, children, or parents.

Mr. Iturribarria claims that his three school-aged U.S. citizen children would suffer extreme hardship if he were deported. In support of this claim, the record contains several letters written by a family doctor, an elementary school teacher of his son, and a school psychologist, attesting to the Iturribarrias' strong familial bonds. Some of the letters express the view that the Iturribarria children would suffer if their father were deported and they were compelled to live in Mexico with him.

The potential hardships described by the letters appear to be the same hardships, difficult as they are, suffered by many citizen children when an alien parent is deported. Abruptly leaving a familiar social and educational milieu, or losing educational, economic, and other opportunities available in the United States, will create serious adjustment issues for any citizen child. We do not wish to minimize the upheaval experienced by citizen children who must leave the United States to accompany a deported parent to his country of deportation. We are compelled by our case law, however, to conclude that the potential hardships described by the letters presented by petitioner are not "extreme" for the purposes of § 244 relief. *See Perez v. INS*, 96 F.3d 390, 392–93(9th Cir.1996) (adjustment difficulties experienced by U.S. citizen children accompanying an alien deported to a foreign country and family's potential loss of economic opportunities did not constitute extreme hardships); *Shooshtary v. INS*, 39 F.3d 1049, 1051 (9th Cir.1994) ("The uprooting of family, the separation from friends, and other normal processes of readjustment to one's home country after having spent a number of years in the United States are not considered extreme, but represent the type of inconvenience and hardship experienced by the families of most [to-be-deported] aliens ...") Furthermore, Mr. Iturribarria has not offered any evidence suggesting that his children would remain in the United States if he were deported,

thereby forcing the family to separate. *See Perez,* 96 F.3d at 393(extreme hardship occasioned by family separation not shown where petitioners did not provide evidentiary material showing their family's intent to separate upon petitioners' deportation).

Thus, the BIA did not abuse its discretion in concluding that Mr. Iturribarria is not qualified for the relief for which counsel's representation may have prevented him from timely applying. Mr. Iturribarria's due process claim therefore does not require reopening his deportation proceeding.

## CONCLUSION

Analysis of the relevant regulatory language and interpretive BIA and circuit case law demonstrates that the BIA's occasional practice of construing motions based on previously undiscoverable evidence of ineffective assistance of counsel as motions to reconsider, rather than motions to reopen, contradicts the plain language of the regulations, is inconsistent, and is at odds with this court's reasoned reading and application of those regulations. Accordingly, the BIA abused its discretion in misapplying its regulations to Mr. Iturribarria's motion.

Because Mr. Iturribarria alleged fraudulent and deceptive acts by former counsel that led to flawed appeals and a need to retain new counsel in order to file a motion to reopen, he has shown a prima facie entitlement to equitable tolling until the point at which, exercising due diligence, he discovered former counsel's allegedly deceptive acts. It was therefore an abuse of discretion to deny Mr. Iturribarria equitable tolling without a hearing to determine the truth of his assertions. Although Mr. Iturribarria presents a prima facie case that counsel's performance was flawed, he cannot demonstrate that counsel's alleged

malfeasance prejudiced his claim for relief, given the strict standard for finding "extreme" hardship adopted by this court. Accordingly, the petition for review is DENIED.