**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAKDA FESSEHAIE TECLEZGHI, | Nos. 07-70661, 07-71463 |
| Petitioner, | Agency No. A75-618-966 |
| v. | MEMORANDUM [*] |
| ERIC H. HOLDER, JR., ATTORNEY GENERAL | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued September 1, 2009
Withdrawn from submission November 24, 2009
Resubmitted March 4, 2010
San Francisco, California

Before: B. FLETCHER and KLEINFELD, Circuit Judges, and DUFFY, [**] District
Judge.

The only issues presented by this case are whether the Board of Immigration

Appeals ("BIA") abused its discretion in refusing to reopen petitioner Makda Fessehaie

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

1

Teclezghi's ("Teclezghi" or "Petitioner") case after almost three years' delay and in denying Petitioner's motion to reconsider the same. Petitioner, a native and citizen of Eritrea, petitions for review from two final removal orders of the BIA: (1) a January 23, 2007, order denying Teclezghi's motion to reopen as untimely; and (2) a March 28, 2007, order denying her motion to reconsider the BIA's previous decision. Because Petitioner's motion to reopen was time-barred, and we decline to hold that Petitioner's three prior attorneys rendered ineffective assistance, we deny her petitions for review.

On April 12, 1998, Teclezghi first arrived in the United States from Eritrea on a B-2 non-immigrant visa for a period not to exceed October 11, 1998. On October 2, 1998, Teclezghi applied for asylum claiming only persecution on account of religion. After the asylum office denied her application, on December 22, 1998, the former Immigration and Naturalization Service ("INS"), now referred to as the Department of Homeland Security ("DHS"), issued Teclezghi a Notice to Appear, charging her as removable for overstaying her visa. Teclezghi conceded removability but applied for asylum, see 8 U.S.C. § 1158, withholding of removal, see 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture ("CAT"), see 8 C.F.R. §§ 1208.16(c), 1208.18, claiming only that she would be persecuted on account of her religion if she were returned to Eritrea.

On June 17, 2002, an immigration judge ("IJ") found Teclezghi's testimony not

2

credible and denied her claims for asylum, withholding of removal, and protection under CAT based on her fear of religious persecution as a Jehovah's Witness. The IJ ordered her removed to Eritrea despite the fact that her brother had been granted asylum based on his fear of persecution as a Jehovah's Witness, stating that her testimony was internally inconsistent, that she did not have sufficient knowledge of the Bible, and that he was not convinced she was devout and active because she first said she did not attend temple and then said she did.

Teclezghi had retained Tania Alvarez for $5,000 to represent her before the IJ. Alvarez attempted to rehabilitate Teclezghi, eliciting testimony that she was nervous and did not understand some of what was asked, but the IJ was not persuaded. Teclezghi paid Alvarez an additional $2,500 to represent her in her appeal to the BIA. The BIA adopted and affirmed the IJ's decision on December 15, 2003. Teclezghi then retained Yemi Getachew for $2,500 to represent her before this court, as well as Alisa Kaufman for $3,000 to present oral argument. Subsequently, this court affirmed the BIA's decision. See Teclezghi v. Gonzales, 187 F. App'x 749, 2006 WL 1876911 (9th Cir. June 30, 2006).

On October 26, 2006, almost three years after the BIA affirmed the IJ's decision denying her relief, while in the custody of Immigration and Customs Enforcement ("ICE"), Petitioner filed a motion to reopen her immigration proceedings on the basis of

3

past persecution. In this motion, Petitioner alleged that she was persecuted on account of her being a member of a particular social group—an Eritrean female who had been subject to ritual female genital mutilation as an infant. Petitioner argued that she should be entitled to equitable tolling to cure the untimeliness of her motion due to the ineffectiveness of her three prior attorneys, and that because she was prejudiced by their ineffective assistance, the BIA should grant her motion to reopen. The BIA denied Petitioner's motion as untimely on January 23, 2007, and declined to apply equitable tolling, finding that her three prior attorneys had not committed error such that she was prevented from bringing her claims based on female genital mutilation in a timely matter, that she was not diligent in filing her motion, and that her allegations of ineffective assistance of counsel were inherently unbelievable.

Subsequently, Teclezghi simultaneously petitioned for review of the BIA's denial of her motion to reopen in this court and filed a motion for reconsideration with the BIA. The BIA denied her motion for reconsideration on the basis that its decision contained no error of fact or law, and Teclezghi appealed. On appeal, we consolidated Teclezghi's petitions for review and deny both.

We have jurisdiction over Teclezghi's petitions for review pursuant to 8 U.S.C. § 1252. See Medina-Morales v. Ashcroft, 371 F.3d 520, 525–29 (9th Cir. 2004) (holding that 8 U.S.C. § 1252(a)(2)(B) does not deprive the court of jurisdiction to review a

4

petition challenging the denial of a motion to reopen and cited approvingly by the Supreme Court in Kucana v. Holder, – U.S. –, 130 S. Ct. 827, 839 (2010)). We review BIA rulings on motions to reopen and for reconsideration for abuse of discretion and will reverse only if the BIA acted arbitrarily, irrationally, or contrary to law. Mohammed v. Gonzales, 400 F.3d 785, 791 (9th Cir. 2005) (citations omitted). We review factual findings for substantial evidence and questions of law de novo. Id. at 791–92; Socop-Gonzalez v. INS, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc) ("Socop"). Generally, motions to reopen are disfavored because of the "strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases," especially in the immigration context because "[g]ranting such motions too freely will permit endless delay of [removal] by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case" for relief. INS v. Abudu, 485 U.S. 94, 107–08 (1988) (quotation omitted).

Pursuant to the applicable regulation:

> A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to

5

apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.

8 C.F.R. § 1003.2(c)(1).

By law, a "motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal," subject to a few statutory and regulatory exceptions not at issue in this case. 8 U.S.C. §1229a(c)(7)(C)(i); accord 8 C.F.R. § 1003.2(c)(2), (3). The statute of limitations for filing motions to reopen is subject to equitable tolling on the ground of ineffective assistance of counsel "when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." Iturribarria v. INS, 321 F.3d 889, 897 (9th Cir. 2003) (citing Rodriguez-Lariz v. INS, 282 F.3d 1218 (9th Cir. 2002); Socop, 272 F.3d 1176; Lopez v. INS, 184 F.3d 1097 (9th Cir. 1999)).

However, the cases in which this court has applied equitable tolling to excuse a petitioner's failure to meet the filing deadline generally involved the malfeasance of attorneys, people misrepresenting themselves as attorneys, or immigration officials, who affirmatively defrauded their clients, completely failed to file documents for their clients as promised, or actively misled the petitioners such that their claims were defaulted. See Iturribarria, 321 F.3d at 897; Socop, 272 F.3d at 1181–82; Lopez, 185 F.3d at 1098–1101. For example, in Iturribarria, this court applied equitable tolling to permit

6

the petitioner in that case to file his motion to reopen seeking suspension of deportation when his attorney before the IJ failed to file the petitioner's application on the date set by the IJ after being warned that failure to do so would result in default. 321 F.3d at 892. When asked by the IJ why she had not filed the application, the attorney in that case blamed her omission on her client, stating that he had not provided her with the necessary supporting documents. Id. She repeated this representation to the BIA on appeal, and included an affidavit in English signed by her client stating that he was responsible. Id. at 892–93. Her client could not read English, and the affidavit had never been translated for him. Id. at 893. After the BIA denied the petitioner's appeal, the petitioner obtained new counsel who filed a motion to reopen six days after the deadline. Id. at 897. Under those circumstances, we held equitable tolling should apply to excuse his failure to timely file his motion to reopen. Id. at 899; see also Singh v. Ashcroft, 367 F.3d 1182, 1185–86 (9th Cir. 2004) (applying equitable tolling to a motion to reopen when the petitioner's attorney filed an appellate brief before the BIA twenty months late, failed to resubmit it as instructed by the BIA, and failed to inform the petitioner of what had occurred after the petitioner paid his attorney to pursue an appeal before the BIA and called to check on the status of his appeal); Socop, 272 F.3d at 1181–82 (applying equitable tolling to the petitioner's motion to reopen when the petitioner was misled by an immigration official causing him to trigger his own

immediate deportation); Lopez, 184 F.3d 1098–1101 (applying equitable tolling to a motion to reopen when the petitioner's attorney, actually a notary public misrepresenting himself as a lawyer, twice failed to appear as promised, first at the petitioner's asylum hearing, and then at the deportation hearing, causing the petitioner to be ordered deported in absentia).

This is a very different case. Here, Petitioner paid three attorneys to file claims for asylum, withholding of removal, and CAT relief based on her professed fear of persecution upon returning to Eritrea on account of her religious beliefs. Her attorneys zealously advocated on her behalf first before the IJ, then before the BIA, and finally on appeal before this court, where we upheld the decisions below and denied her petition. See Teclezghi, 187 F. App'x 749, 2006 WL 1876911. Almost three years later, Petitioner argued in her motion to reopen that her prior attorneys provided ineffective assistance because they failed to ask her an intensely personal question and raise a claim for relief that Petitioner admittedly never mentioned to them. This might arguably be another case had Teclezghi at or before the first proceeding expressed fear of returning to Eritrea due to female genital mutilation, or perhaps even had she informed her attorneys that she had suffered such a procedure in her infancy, and her attorneys still failed to raise it as a ground for relief. However, in this case, Petitioner never even alluded to female genital mutilation as a reason she might fear returning to Eritrea. We

8

decline Petitioner's invitation, as did the BIA, to craft a new rule of law out of whole cloth and hold categorically that it is attorney error, which, with prejudice, would result in ineffective assistance of counsel, for an attorney not to inquire of his or her own accord into the condition of a client's genitals when the client comes to the attorney expressing fear of religious persecution or any other unrelated subjective fear of returning to his or her native land.

Petitioner raises Mohammed as a case demonstrating that female genital mutilation is a ground for asylum, and that it is ineffective assistance of counsel for an attorney to fail to raise it. This case is distinguishable in two important ways: (1) in Mohammed, this court had no occasion to rule on the issue now before us—attorney error—as the government did not contest it, 400 F.3d at 794; and (2) the motion to reopen filed by the petitioner in Mohammed was timely filed, id. at 789–91 (containing no mention of untimely filing in procedural history section).

Consequently, we conclude that the BIA acted within its broad discretion in denying Petitioner's motion to reopen filed nearly three years late. Further, as we conclude that Petitioner could point to no error of law or fact in the BIA's discretionary decision to deny her motion to reopen, the BIA properly denied her motion to reconsider as well. See 8 U.S.C. § 1229a(c)(5); 8 C.F.R. § 1003.2(b)(1).

Petitions DENIED.

*Teclezghi v. Holder*, 07-70661, 07-71463

B. FLETCHER, Circuit Judge, dissenting from all but the result.

I respectfully dissent from all but the result that is required by procedural default.

"It is well-settled that [female genital mutilation] constitutes persecution sufficient to warrant a grant of asylum." *Abebe v. Gonzales*, 432 F.3d 1037, 1042 (9th Cir. 2005) (en banc) (citing *In re Kasinga*, 21 I. & N. Dec. 357, 365 (BIA 1996); *Mohammed v. Gonzales*, 400 F.3d 785, 795-96 (9th Cir. 2005); *Toure v. Ashcroft*, 400 F.3d 44, 49 n. 4 (1st Cir. 2005); *Balogun v. Ashcroft*, 374 F.3d 492, 499 (7th Cir. 2004); *Abay v. Ashcroft*, 368 F.3d 634, 638 (6th Cir. 2004); *Abankwah v. INS*, 185 F.3d 18, 23 (2d Cir. 1999)); *see also Benyamin v. Holder*, 579 F.3d 970 (9th Cir. 2009). The majority opinion appears to ignore this fact, elevating the potential discomfort a lawyer might feel in asking a woman whether she has suffered female genital mutilation over the lawyer's duty to do his or her job. I cannot accept this premise.

"For an alien unfamiliar with the laws of our country, an attorney serves a special role in helping the alien through a complex and completely foreign process." *Mohammed v. Gonzales*, 400 F.3d 785, 792 n.7 (9th Cir. 2005) (internal quotation omitted). Although the Sixth Amendment right to counsel does not apply in a deportation proceeding, the petitioner still must be afforded due process

under the Fifth Amendment. *Id.* at 793. Ineffective assistance of counsel rises to the level of a due process violation if "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Id.* (internal quotation omitted). To prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate that counsel failed to perform with sufficient competence and that counsel's performance resulted in prejudice. *Id.* Prejudice results when the inadequate performance may have affected the outcome. *Id.* at 793-94.

Teclezghi has carried her burden on both prongs. The country conditions report in the record shows that nearly 90 percent of women in Eritrea experience genital mutilation. Thus, the attorneys in this case should have been on notice of the high probability that Teclezghi would be eligible for asylum because she had undergone this brutal procedure. Teclezghi presented evidence on her motion to reopen that she, personally, had suffered female genital mutilation, including a declaration from a board-certified physician who had conducted an exam of Teclezghi and found her "prepuce and clitoris were absent" and that the "labia minora were also absent bilaterally." Yet her attorneys all failed to inquire as to whether Teclezghi had suffered genital mutilation. An attorney does not perform competently where the attorney fails "to inquire of his or her own accord into the condition of a client's genitals," maj. op. at 9, when that condition – here, female

genital mutilation – is an established basis for asylum and the country conditions report indicates a 90 percent chance the client has suffered this form of persecution.

If it was not clear in 1998 when Teclezghi initially filed for asylum, it is clear now: Female genital mutilation is a ground for asylum. *Mohammed*, *Abebe*, and *Benyamin* erase any doubt about that fact. Therefore, Teclezghi was prejudiced by the failure of her attorneys to inquire into and raise female genital mutilation as a ground for asylum, as this failure not only might have affected the outcome of the proceeding, but it most certainly did. *See Mohammed*, 400 F.3d at 794.

Had the motion to reopen been timely, Teclezghi would be entitled to relief. Our case law dictates that result. It is only because of the amount of time that elapsed between Teclezghi's initial petition and her motion to reopen that I concur in the result.