**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MAKDA FESSEHAIE TECLEZGHI,
                    *Petitioner,*

          v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 07-70661

Agency No.
A075-618-966

---

MAKDA FESSEHAIE TECLEZGHI,
                    *Petitioner,*

          v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 07-71463

Agency No.
A075-618-966

ORDER

Filed January 4, 2011

Before: Betty B. Fletcher and Andrew J. Kleinfeld,
Circuit Judges, and Kevin Thomas Duffy,*
Senior District Judge.

Order;
Dissent by Judge Pregerson

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

291

## ORDER

Judges Kleinfeld and Duffy voted to deny the petition for rehearing. Judge Fletcher voted to grant the petition for rehearing. Judges Kleinfeld and Duffy recommend denying the petition for rehearing en banc, and Judge Fletcher recommends granting the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc, and a judge of the court requested a vote on whether to rehear the case en banc. The en banc call failed to receive a majority of votes by active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED.

---

PREGERSON, Circuit Judge, dissenting from the denial of rehearing en banc:

An attorney representing an asylum seeker has a duty to investigate all grounds upon which an applicant may be entitled to relief. However, the panel majority in this case erroneously and absurdly concludes otherwise. The panel majority holds that an attorney does not provide ineffective assistance of counsel when she fails to inquire as to whether her female client has suffered female genital mutilation when (1) nearly 90 percent of women in the client's home country endure such a brutal procedure, and (2) it is well-settled that female genital mutilation constitutes persecution sufficient to warrant a grant of asylum.

Specifically, the panel majority tells us that an attorney does not perform incompetently in these circumstances by failing "to inquire of his or her own accord into the condition of a client's genitals . . . ." *Teclezghi v. Holder*, 378 F. App'x

615, 618 (9th Cir. 2010). As Judge Betty Fletcher wrote in her dissent, the panel majority elevates the "potential discomfort a lawyer might feel in asking a woman whether she has suffered female genital mutilation over the lawyer's duty to do his or her job." *Id.* at 619 (B. Fletcher, J., dissenting). Because I believe the panel majority's decision will have a detrimental effect on asylum seekers and is completely contrary to our precedent, I dissent from the denial of rehearing en banc.

Teclezghi timely applied for political asylum claiming persecution on account of religion. Her asylum application was denied by the IJ, the BIA, and this court. *See Teclezghi v. Gonzalez*, 187 F. App'x 749, 750-51 (9th Cir. 2006). Teclezghi filed a motion to reopen based on the ineffective assistance of her previous attorneys, who all failed to ask her whether she had suffered female genital mutilation, a basis upon which she could have applied for asylum. *Teclezghi*, 378 F. App'x at 616. The BIA denied Teclezghi's motion to reopen as untimely and this court dismissed her petition for review. *Id.* at 616-17. We voted on whether to rehear this case en banc, and a majority of the active judges of this court did not vote for a rehearing en banc.

I dissent from the denial of rehearing en banc. The BIA clearly erred in failing to equitably toll the deadline for Teclezghi to file her motion to reopen until she definitively discovered her prior attorneys' ineffective assistance. *See Singh v. Gonzales*, 491 F.3d 1090, 1096 (9th Cir. 2007). The panel majority's conclusion that Teclezghi did not suffer ineffective assistance of counsel and the panel majority's refusal to equitably toll the deadline until Teclezghi discovered her prior counsels' incompetence is contrary to our precedent.

## I. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, "the petitioner must demonstrate first that counsel failed to perform with sufficient competence, and, second, that she was

prejudiced by counsel's performance." *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005).

## A.　Failure to Perform with Sufficient Competence

Teclezghi's attorneys undoubtedly failed to perform with sufficient competence. The 2005 Department of State Report on Human Rights practices in Eritrea, which was submitted to the court, shows that nearly 90 percent of women in Eritrea endure female genital mutilation. *Teclezghi*, 378 F. App'x at 619 (B. Fletcher, J., dissenting). The attorneys in this case *should have known* of the "high probability that Teclezghi would be eligible for asylum because she had undergone this brutal procedure." *Id*. However, all of Teclezghi's attorneys failed to inquire into and raise female genital mutilation as a ground for asylum. This clearly falls below the standards of competency.

Nevertheless, the panel majority concludes that Teclezghi's attorneys did not fail to perform with sufficient competence when they "failed to ask her an intensely personal question and raise a claim for relief that [she] admittedly never mentioned to them." *Id.* at 618. But this is to be expected. Most women who have been sexually traumatized (because of sexual violence, forced abortions, or female genital mutilation) "find it extremely difficult to talk about [their experiences]." Nahla Valji, Lee Anne De La Hunt, *Gender Guidelines for Asylum Determination*, THE UNIVERSITY OF CAPE TOWN LEGAL AID CLINIC, NATIONAL CONSORTIUM ON REFUGEE AFFAIRS, 23 (1999), *available at* www.web.net/ccr/safr.PDF. In a South African case study, of the 678 female client files reviewed, "none mentioned [Female Genital Cutting] as a reason for seeking asylum." Lindsay M. Harris, *Untold Stories: Gender Related Persecution and Asylum in South Africa*, 15 MICH. J. GENDER & L. 291, 314 (2009). Harris also interviewed eighteen women who had experienced some form of gender-related persecution and "[s]everal women . . . failed to realize that such disclosure was necessary to obtain refugee status."

*Id.* at 334. Some women did not disclose details of their gender-related persecution "because they were not asked questions to elicit such information" and "did not understand the importance of disclosing details of their persecution." *Id.*

Contrary to the panel majority's view, immigration attorneys do have a duty to identify all forms of relief that are available to their clients, including female genital mutilation. In turn, clients should be able to rely on their attorneys to competently perform this duty. Teclezghi had no reason to know that her female genital mutilation would qualify as a basis of asylum in the United States. The panel majority, however, erroneously places the burden on the asylum seeker to relay all types of personal facts to her attorney, regardless of whether the asylum seeker knows the facts are relevant to her asylum claim. Whereas this court has recognized that the burden of inquiry and investigation of potential forms of immigration relief is on the attorney, *see Mohammed*, 400 F.3d at 792 n.7, the panel majority here incorrectly shifted the burden of inquiry to the asylum seeker.

Furthermore, the panel majority's holding runs contrary to the ethical standards of competence and diligence that govern all attorney conduct. The advisory committee notes for Rule 1.1 of the Model Rules of Professional Conduct explain that "competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem . . . ." MODEL RULES OF PROF'L CONDUCT R. 1.1 cmt. 5 (2002). The panel majority forgives attorneys for failing to inquire about or investigate relevant country conditions that have a 90 percent likelihood of applying to their clients' claims for political asylum. This abrogates the attorney's responsibility to inquire about and analyze the factual and legal elements relevant to her client's claim. *Id.* This is not "competent handling" and would likely lead to unfair and unfortunate results in asylum proceedings.

### B.    Prejudice

"[P]rejudice results when the performance of counsel was so inadequate that it *may* have affected the outcome of the proceedings." *Mohammed*, 400 F.3d at 793-94 (emphasis in original) (internal quotation marks and citation omitted). Teclezghi certainly suffered prejudice because of her attorneys' inadequate performances.

We have recognized that female genital mutilation is a ground for asylum in the United States. *See In re Kasinga*, 21 I. & N. Dec. 357, 361 (BIA 1996)*; Benyamin v. Holder*, 579 F.3d 970 (9th Cir. 2009); *Mohammed*, 400 F.3d at 795-96; *Abebe v. Gonzales*, 432 F.3d 1037, 1042 (9th Cir. 2005) (en banc). In fact, we found in *Mohammed* that a woman whose attorney failed to present evidence that she had suffered female genital mutilation in the past was prejudiced by her attorney's ineffective assistance. 400 F.3d at 801-03. Had Teclezghi's prior attorneys told her that female genital mutilation is a ground for asylum in the United States and asked her whether she had suffered this brutal experience, she undoubtedly would have told them that she had. Thus, I believe the outcome would have been different. At the very least, Teclezghi has satisfied her burden of showing that the outcome *may* have been different. *Id.* at 793-94. Therefore, Teclezghi was prejudiced by her attorneys' failure to perform with sufficient competence and should have prevailed on her ineffective assistance of counsel claim.

## II.    Equitable Tolling

Because Teclezghi suffered ineffective assistance of counsel, the panel majority should have tolled the deadline to file her motion to reopen until she definitively discovered her prior counsels' ineffective assistance. *See Singh*, 491 F.3d at 1096. The panel majority's refusal to toll the deadline conflicts with our precedent in *Iturribarria v. INS*, 321 F.3d 889 (9th Cir. 2003) and *Wenqin Sun v. Mukasey*, 555 F.3d 802

(9th Cir. 2009). The panel majority correctly quoted *Iturribarria* for the rule that equitable tolling of deadlines is appropriate when a petitioner is prevented from filing because of "deception, fraud, or error." 321 F.3d at 897, *see Teclezghi*, 378 F. App'x at 618. However, the panel majority only discusses cases of attorney deception and fraud, but not cases involving attorney error, such as in *Wenqin Sun*. *Id*. In *Wenqin Sun*, we found that a lawyer's innocent legal error may equitably toll a motion to reopen deadline. 555 F.3d at 805-06. Specifically, this court stated that "equitable tolling . . . applies when a petitioner acts promptly after discovering counsel's error." *Id*. In this case, Teclezghi's attorneys' failure to inquire about whether she had suffered female genital mutilation were errors. Thus, the panel majority should have equitably tolled her deadline for filing a motion to reopen and determined whether Teclezghi acted promptly after discovering her previous counsels' errors.

## III.   Conclusion

The panel majority fails to recognize that most political asylum applications are intensely personal, often painful, and may involve questions of sexual torture, rape, and humiliation. It is entirely expected that clients may not want to readily reveal such circumstances to their attorneys. It is precisely because the subject matter of an asylum claim based on female genital mutilation is so intensely personal and our immigration system so complex that an attorney has a special responsibility to adequately explain to her female clients their rights to asylum and diligently investigate all grounds for relief. The panel majority's decision allowing attorneys to forego investigating intensely personal facts in an asylum claim diminishes the attorney's role in the asylum process. Our precedent tells us that competent attorney performance requires more. I believe that our court should instill a greater sense of professional responsibility in attorneys who represent asylum seekers. Accordingly, I dissent from the denial of rehearing en banc.