**Margarita HILARION–DE APOLINAR, Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney General, Respondent.**

No. 02–74441.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 2005.

Decided May 17, 2005.

---

\* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Maria Janossy, Law Offices of Maria Janossy, Glendale, CA, for Petitioner.

Regional Counsel, Western Region, Laguna Niguel, CA, CAC–District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, David V. Bernal, Attorney, Russell J.E. Verby, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: SCHROEDER, Chief Judge, PREGERSON and TROTT, Circuit Judges.

---

## MEMORANDUM **

Petitioner Margarita Hilarion–De Apolinar ("Hilarion") is a native and citizen of Mexico who first entered the United States illegally in 1988. When Hilarion and her husband last entered the United States in September 1997, they were both arrested for entering without inspection. In October 1997, the INS initiated removal proceedings against them by serving them with notices to appear. Hilarion was scheduled to appear on July 6, 1998, and her husband was scheduled to appear the following day, July 7, 1998.

To assist them with their removal cases, Hilarion and her husband retained the services of Richard Miranda, who they believed was an attorney but was actually only a notario. Miranda informed Hilarion that he would consolidate her case with her husband's and told her that she should appear together with her husband at his removal hearing on July 7, 1998.

Hilarion appeared with her husband before an immigration judge ("IJ") on July 7, 1998. Neither Miranda nor the attorneys for whom he worked, Ronald Hettena and Daphne Pereat, appeared. The IJ informed Hilarion that she did not have Hilarion's case. The IJ actually responsible for Hilarion's case had ordered Hilarion removed *in absentia* the day before because Hilarion failed to appear and Miranda had apparently failed to file a request for consolidation.

Recognizing that Miranda's actions resulted in Hilarion's removal order, on July 17, 1998, Pereat filed a motion to reopen Hilarion's removal proceedings. Even though Hilarion paid Pereat's office sufficient funds (in cash) to cover the fee required for her motion to reopen, the motion to reopen filed by Pereat was not

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

accompanied by the required filing fee. The immigration court sent a notice requesting payment of the filing fee or the filing of a fee waiver request. Instead of simply paying the fee, Pereat filed a fee waiver request on November 9, 1998. On December 4, 1998, an IJ denied the fee waiver request without prejudice to refiling Hilarion's motion to reopen with the correct filing fee. Crucially, neither Miranda nor Pereat ever refiled Hilarion's motion to reopen.

At some point in the next fifteen months, Hilarion retained new counsel, Maria Janossy. On May 5, 1999, Janossy reviewed the immigration court's record of Hilarion's proceedings. Believing that there was no relief available to Hilarion at that time, Janossy did nothing.

A year later, Hilarion hired a third lawyer, David Soldan. On August 1, 2000, Soldan filed a second motion to reopen on Hilarion's behalf. The second motion to reopen argued that Hilarion's *in absentia* removal order should be vacated because Hilarion had timely filed her first motion to reopen and her failure to appear at her July 6, 1998, removal hearing was due to Miranda's ineffective assistance—namely, Miranda's failure to consolidate Hilarion's case with her husband's and Miranda's directive that Hilarion need not appear at the immigration court on July 6, 1998.

A few weeks later, Sodan filed a "Supplement to [the] Motion to Reopen Removal Proceedings and Stay Removal," which argued that, under our decision in *Lopez v. INS*, 184 F.3d 1097 (9th Cir.1999), Hilarion's second motion to reopen should be equitably tolled and deemed timely because of Pereat's failure in December 1998 to refile Hilarion's first motion to reopen with the required filing fee.

On October 23, 2000, an IJ denied Hilarion's second motion to reopen. The IJ recognized that, under *Lopez*, "an in ab-sentia order may be equitably tolled by fraudulent misrepresentations and conduct by an attorney or representative (including an illegal representative like a notario)." But the IJ determined that, under *Lopez*, the time for filing a motion to reopen could be tolled until only December 1998, when Hilarion's first motion to reopen was denied without prejudice for failure to pay the filing fee. In the IJ's view, Hilarion "fail[ed] to allege any fraudulent or improper actions by her attorneys or notario after the failure to refile the motion to reopen with the correct filing fee in December 1998." Accordingly, under the IJ's ruling, Hilarion's second motion to reopen was due in June 1999—180 days from December 1998. Because Hilarion's second motion to reopen was not filed until August 2000, the IJ deemed it untimely and denied it.

On November 26, 2002, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision in a brief *per curiam* decision. Like the IJ, the BIA recognized *Lopez*'s applicability, agreed with the IJ that Hilarion's deadline for filing her second motion to reopen should be tolled until only December 1998, and deemed Hilarion's second motion to reopen untimely because it was filed more than a year after its June 1999 deadline. Hilarion then re-retained Janossy, who timely filed the instant appeal.

Equitable tolling will be applied in situations where, "despite all due diligence, [the party requesting equitable tolling] is unable to obtain vital information bearing on the existence of the claim." *Socop–Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) (citation and internal quotations omitted); *see also Iturribarria v. INS*, 321 F.3d 889, 897, 899 (9th Cir.2003) (requiring due diligence from the petitioner and concluding that limitations period began when petitioner met with counsel

**614**

and learned of prior counsel's misconduct). Neither the administrative record nor the parties' briefs reveal at what point Hilarion learned that Miranda and Pereat had failed to refile her first motion to reopen with the required filing fee. The IJ and BIA charged Hilarion with knowledge of this "vital information" as of December 1998. The record before us, however, does not support such a conclusion.

Nor do the record or the parties' briefs indicate when Hilarion learned that Miranda and Pereat's failure to refile her motion to reopen might allow her to seek equitable tolling and timely file a second motion to reopen. Even if Hilarion suspected, when she first retained Janossy in April 1999, that she could timely file a second motion to reopen, Janossy refuted Hilarion's suspicions when Janossy told her that, as of May 5, 1999, Hilarion was ineligible for relief. Accordingly, the critical fact for determining for how long Hilarion's second motion to reopen should be tolled is when, between May 5, 1999, and August 1, 2000 (the date Soldon filed Hilarion's second motion to reopen), Hilarion learned that she could properly file a second motion to reopen. Because this fact was not developed by the IJ or the BIA, we remand this matter to the BIA so it may do so in the first instance.

PETITION GRANTED.