# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-2281

SAMUEL BARASEINDE JOHNSON,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

———————

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A91 405 136

———————

ARGUED JANUARY 3, 2007—DECIDED FEBRUARY 28, 2007

———————

Before KANNE, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Samuel Baraseinde Johnson is a Nigerian who came to this country in 1984 as a student. In 1989 he was granted temporary resident status, and in 1991 he became a permanent resident. He is married to a United States citizen and has two sons who are also citizens of this country. One of his sons is in grade school. The other is a student at Dartmouth College. Johnson himself has a bachelor's degree in business. With his wife, he owns and operates a business which employs eight people. The Johnsons also own their own home. His seems to be an American success story, but, unfortunately, there is a dark side: Johnson is also a convicted felon, having

entered a guilty plea in 1992 in a Chicago federal court-
room to a charge of conspiracy to possess heroin with
intent to distribute. In 1993, he was sentenced to serve a
term of 5 years in prison. The record does not show the
length of time Johnson was actually imprisoned.

Soon after he began serving his sentence, Johnson found
himself in the crosshairs of the former Immigration and
Naturalization Service (INS). Formal proceedings com-
menced in 1995 when the INS filed an order to show cause
why Johnson should not be deported (the former name of
removal) because he was an aggravated felon who commit-
ted a drug trafficking crime.

A decade has passed since the INS got this ball rolling,
and now the case has landed here. The issue before us
involves whether Johnson can somehow obtain relief in the
form of a waiver from deportation under now-repealed
§ 212(c) of the Immigration and Nationality Act, 8 U.S.C.
§ 1182(c).

At the time of Johnson's guilty plea, § 212(c) allowed the
Attorney General to waive deportation for aliens under
certain circumstances. At least for purposes of this appeal,
the parties seem to agree that at the time of his plea,
Johnson was eligible to apply for a waiver. And, in fact, his
chances of obtaining one might have been pretty
good: between 1989 and 1995, § 212(c) relief was granted
to over 10,000 aliens—or 51 percent of those who applied.[1]

But times change, and in 1996 Congress enacted the
Antiterrorism and Effective Death Penalty Act (AEDPA)
(110 Stat. 1214); § 440(d) of that Act amended § 212(c) by
identifying a broad set of offenses for which convictions

---

[1]  Rannik, *The Anti-Terrorism and Effective Death Penalty Act of
1996: A Death Sentence for the 212(c) Waiver*, 28 U. Miami Inter-
Am. L. Rev. 123, 150 n.80 (1996).

would preclude a waiver, including Johnson's drug conviction. Then, 5 months later that same year, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) (110 Stat. 3009). IIRIRA, which became effective in April 1997, repealed § 212(c) and replaced it with a new section giving the Attorney General authority to cancel removal only for a very narrow class of aliens. 8 U.S.C. § 1229(b). Johnson does not qualify for § 1229(b) relief.

During this time of flux, Johnson was before an immigration judge on charges of deportability. In a decision on July 3, 1996, the judge denied Johnson the opportunity to apply for a waiver of deportation. Johnson appealed to the Board of Immigration Appeals, and in a decision dated April 23, 1997, the Board dismissed his appeal based on *In re Soriano*, 21 I & N Dec. 516 (BIA 1996). *Soriano* held that § 440(d) of AEDPA (expanding the list of offenses which prevent a waiver of deportation) was effective upon enactment and that Congress intended the section to apply to aliens already in proceedings on that date—April 24, 1996. In other words, the Board found that the statute had retroactive effect. Johnson was out of luck.

His prospects took a turn for the better, though, when the Supreme Court considered the situation of another alien seeking § 212(c) relief. Enrico St. Cyr entered a guilty plea in March 1996, before either Act was effective. Under pre-AEDPA and pre-IIRIRA law, he would have been eligible for § 212(c) relief, but proceedings against him were not begun until April 10, 1997, at which time the Attorney General contended that he no longer had discretion to grant a waiver. Both the district court and the Court of Appeals for the Second Circuit rejected that view and sided with St. Cyr.

As did the Supreme Court. In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Court noted that a guilty plea is a quid pro

quo and that aliens like St. Cyr might very well have factored into their decision to plead guilty based on the belief that they would be eligible for § 212(c) relief. In other words, eligibility for relief was part of what they were receiving in return for the guilty plea. The Court found that § 212(c) relief remains available for aliens whose "convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." At 326.

*St. Cyr* was a reprieve for Johnson. But he did not act fast enough to take advantage of it. He was taken into the custody of the Department of Homeland Security in January of 2006. It was not until after being detained that he filed a motion to reopen his case to present his § 212(c) claim.

Meanwhile, faced with the *St. Cyr* decision, the Executive Office for Immigration Review (EOIR), pursuant to its authority delegated by the Attorney General, published a proposed rule on August 13, 2002, setting forth how requests for § 212(c) relief would be handled. The final rule was published 2 years later. As relevant here, the rule—8 C.F.R. § 1003.44(h)—provides that an "alien subject to a final administrative order of deportation or removal must file a special motion to seek section 212(c) relief on or before April 26, 2005," which was 180 days from the October 28, 2004, effective date of the rule.

Johnson's motion to reopen and remand for consideration of his application for § 212(c) relief was not filed until February 24, 2006—too late. The Board denied the motion as untimely. He appeals from that decision. Our jurisdiction to review the case comes from yet another congressional foray into immigration reform, the Real ID Act of 2005—119 Stat. 231 (May 11, 2005), 8 U.S.C. § 1252.

Johnson argues that § 1003.44(h) has an impermissible retroactive effect. He says enacting the rule was beyond

the authority of the agency, that it violated his due process rights, that it should be subject to equitable tolling in his case, and that the Board's decision is an abuse of discretion.

Some of the issues Johnson raises are easily disposed of. There are at least two problems with his due process claim. First, as we said in *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003), it is hard to show that "the loss of a chance at wholly discretionary relief from removal is the kind of deprivation of liberty or property that the due process clause is designed to protect." *See also United States v. Lopez-Ortiz*, 313 F.3d 225 (5th Cir. 2002). On the other hand, *Roque-Espinoza* also stated that there was a significant difference between saying one has a right to *obtain* discretionary relief and saying that one has a right to *seek* discretionary relief. We allowed for the possibility that the latter might state a constitutional claim. We saw no need in that case to decide whether it did or not; nor do we here.

Even were we to find that he had a liberty interest, however, Johnson's claim would fail. He argues that his due process rights were violated because he did not receive notice that he had to file his request for discretionary relief by April 26, 2005. He seems to assert that personal notice of the new deadline was required. We reject that contention. The proposed rule was published more than 2 years before the cutoff date. An agency cannot reasonably be required to personally notify every alien who might be affected by a rule change. Johnson might as well say that he should have been personally served with a copy of the *St. Cyr* decision. His due process claim cannot stand.

Nor can we find that the Board abused its discretion in not equitably tolling the time limits and in not reopening his case sua sponte. It is a rare occasion that we reverse a decision on the basis that a time limit should have been

equitably tolled. Equitable tolling requires the exercise of due diligence. *Patel v. Gonzales*, 442 F.3d 1011 (7th Cir. 2006). And it must be shown that the claimant could not have been expected to file earlier. *Pervaiz v. Gonzales*, 405 F.3d 488 (7th Cir. 2005). The time period alone between the *St. Cyr* decision and Johnson's motion prevents us from finding an abuse of discretion on this point. As to sua sponte reopening, we have found that the failure of the Board to reopen a case sua sponte "is a discretionary decision that is unreviewable . . . ." *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003). *See also Calle-Vujiles v. Ashcroft*, 320 F.3d 472 (3d Cir. 2003), and cases cited therein.

The most significant issue Johnson presents involves the authority of the EOIR to promulgate this particular rule. That the EOIR has authority to make certain rules governing its procedures is not in doubt. The Attorney General has authority to "establish such regulations . . . as the Attorney General determines to be necessary . . . ." 8 U.S.C. § 1103(g)(2). But does 8 C.F.R. § 1003.44(h) fall within bounds? Is it procedural or substantive? Is it an impermissible end-run around *St. Cyr*? Does it have an impermissible retroactive effect? Johnson says it suffers from all these infirmities. This argument is not without force but is ultimately unsuccessful.

In *St. Cyr* the impact of the retroactive effect of the amendments on conduct that occurred before their enactment and on the availability of discretionary relief was seen as affecting substantive rights. It "[swept] away settled expectations suddenly and without individualized consideration." At 315. That is essentially what Johnson says § 1003.44(h) does. But the rule does not eliminate relief; it simply imposes a deadline for requesting relief, the sort of procedural limitation that is commonly found in the law. The deadline does not directly contravene *St. Cyr*.

*St. Cyr* says nothing about how long requests for waivers must be entertained. It is hard to conclude that *St. Cyr* requires that requests for waivers can be made into perpetuity.

But the question remains: are the time limits valid and, if so, is the Attorney General the proper entity to impose the limits? In other words, is the rule procedural and within the Attorney General's grant of authority?

We conclude that it is. Section 1003.44(h) is similar to time limits imposed in the Federal Rules of Civil Procedure, Appellate Procedure, and even Criminal Procedure. And, in general, the formulation of procedures is left to the discretion of the agencies with responsibility for substantive judgments. *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978). We grant deference to agency interpretations of the law it administers. *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837 (1984). That deference has been seen as particularly appropriate in the immigration context. *INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999).

An analogous situation was faced by the Court of Appeals for the First Circuit in a case based on the Convention Against Torture (CAT). A regulation was promulgated to require that when a deportation order had become final before March 22, 1999, a petition to reopen had to be filed by June 21, 1999 (8 C.F.R. § 208(b)(2) (2000)). The court noted that nothing in CAT precluded the setting of reasonable time limits and pointed out that even "in criminal cases, constitutional and other rights must be asserted in a timely fashion." *Foroglou v. Reno*, 241 F.3d 111, 113 (1st Cir. 2001).

Also, by its own terms, § 1003.44(h) applies to aliens "subject to a final administrative order of deportation or removal." It governs "special motions" for relief and is clearly a response to *St. Cyr*. The rule affects those who were unable to present a request for a waiver between

1996, when the statutes were amended and *Soriano* was decided, and 2001, when *St. Cyr* reinstated § 212(c) relief. Anyone in proceedings after *St. Cyr* was decided should have presented the request at the time of the hearing, as it is likely that anyone in proceedings before 1996 did. And the rule does not affect a person who was eligible for relief, and who for some reason was placed in removal proceedings only after April 26, 2005. In effect, then, persons affected by the rule had almost 4 years to present their request for the waiver. We cannot find that the rule falls outside the reasonable rule-making authority of the Attorney General.

Accordingly, the petition for review is DENIED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
