NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2007
Decided November 28, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1028

| | |
|---|---|
| OLUWOLE OLUFUNMI and AJANI O. OLUFUNMI, *Petitioners,* | Petitions for Review of Orders of the Board of Immigration Appeals |
| *v.* | Nos. A45-081-162 & A29-427-056 |
| MICHAEL B. MUKASEY, \*Attorney General of the United States, *Respondent.* | |

**O R D E R**

At a removal hearing before an immigration judge ("IJ"), Ajani Olufunmi and his son, Oluwole Olufunmi, were granted voluntary departure. On the last day that the IJ's order permitted them to voluntarily depart, but after the 90-day time limit for filing, the Olufunmis filed nearly identical motions to reopen proceedings against them, arguing that counsel at the original hearing had been ineffective. Oluwole also included documents to show that since accepting voluntary departure, he had married a United States citizen. The IJ denied the motions to reopen as

---

\* Pursuant to Rule 43(c) of the *Federal Rules of Appellate Procedure*, we have substituted Michael Mukasey for Alberto Gonzales as the named respondent.

untimely and held that the ineffective-assistance claim lacked merit. The Board of Immigration Appeals ("BIA") affirmed the IJ's holding on ineffective assistance and held that because Oluwole had failed to submit sufficient evidence to demonstrate that his marriage was bona fide, it would not order a remand to await approval of his wife's visa petition. The Olufunmis now petition for review, raising the same arguments that they raised before the BIA and the IJ. We deny the petitions.

## Background

Ajani Olufunmi, a native and citizen of Nigeria, entered the United States lawfully on a B-2 visitor's visa in January 1989 and later that year, married Yvonne Bonnet, a United States citizen. Ajani and his wife filed I-485 and I-130 applications seeking to have him declared a permanent resident based on their marriage. But the U.S. Immigration and Naturalization Service ("INS") would not approve the applications because it determined that the Nigerian divorce decree dissolving Ajani's first marriage was fraudulent. In response, Ajani obtained a new divorce from his first wife, this time in an American court, married his second wife again, and reapplied for permanent resident status.

The INS investigated Ajani's second marriage in 1997 and 2000 and determined that it was fraudulent. In 1997 when an INS agent visited Ajani's home, Ajani explained that Yvonne was not present because she was with her mother in Denver. In Ajani's bedroom the agent found a phone bill, prescription medication, canceled checks, a bank statement, and a state unemployment payment stub all bearing the name of Ajani's first wife, Grace Olufunmi. The building manager did not recognize a photograph of Yvonne and confirmed that a woman named Grace, who he identified as Ajani's wife, lived in the apartment. In 2000 an INS agent returned to Ajani's home and interviewed Ajani and Grace. Ajani again said that Yvonne was in Denver, this time to attend her mother's funeral, and claimed that he had no way of contacting her. Ajani and Grace claimed that they were brother and sister but could not explain why they did not list each other or any other common siblings on their immigration documents. Ajani said that it was a coincidence that his ex-wife and sister shared the same name and birth date.

After the INS determined that Ajani's second marriage was fraudulent, it denied his I-485 application for adjustment of status. In 2001 the INS issued a Notice to Appear charging Ajani with being a removable alien under Immigration and Nationality Act § 212(a)(6)(C)(i) because he sought to procure a visa by fraud or willfully misrepresented a material fact.

Oluwole Olufunmi is Ajani's 26-year-old son. He is a native of Greece and a citizen of Nigeria who became a lawful permanent resident of the United States in 1996. Oluwole was the subject of a petition for adjustment of status filed by Yvonne

Bonnet Olufunmi, his stepmother and Ajani's second wife. At the same time that the INS issued Ajani a Notice to Appear in 2001, it sent Oluwole a notice informing him that it intended to adjust his immigration status to that of a removable alien on the ground that Ajani and Yvonne's marriage was fraudulent.

Yvonne died in November 2003, and Ajani's I-360 petition as a widower of a United States citizen was approved two years later. On March 7, 2006, Ajani and Oluwole appeared at a removal hearing before an IJ. Although Ajani's I-360 petition had been approved, his application for a visa was apparently still pending and the government still considered him a removable alien. Perhaps believing that the approval of the I-360 petition made contesting the removal hearing unnecessary, the Olufunmis did not argue that Ajani's marriage was bona fide or that they were not subject to removal for some other reason. Instead, they asked for voluntary departure. The IJ granted their applications to voluntarily depart, ordering that if they failed to do so on or before July 5, 2006, they would be removed to Nigeria. In exchange, the government agreed to drop from the Notice to Appear the allegation that Ajani had sought to acquire citizenship through a fraudulent marriage.

But the Olufunmis did not keep their side of the bargain. On July 5 instead of voluntarily departing the country as promised, Ajani and Oluwole sought in separate motions, filed by new counsel, to reopen the IJ's order on the ground that their original counsel was ineffective. They claimed that counsel had improperly discouraged them from proceeding with a hearing and had failed to explain that a ten-year unlawful-presence bar might have applied upon their voluntary departure.[1] To explain their untimeliness in seeking to reopen, the Olufunmis claimed that they did not realize the consequences of voluntary departure until receiving a letter on June 20, 2006, informing Ajani that his application for a visa had been forwarded to the Citizenship and Immigration Services. In addition, Oluwole submitted evidence of his marriage, just days before, to an American citizen.

In two nearly identical decisions, the IJ denied the motions to reopen because they were not timely under 8 C.F.R. § 1003.23(b)(1), which requires that a motion to reopen be filed within 90 days of a final administrative order. The IJ did not

---

[1]In their filings before the IJ, the BIA, and this court, the Olufunmis fail to explain what they mean by unlawful-presence bar. It is possible that they are referring to the ten-year bar from certain forms of relief that would apply if they failed to voluntarily depart as promised. *See* 8 U.S.C. § 1229c(d). More likely, though, they are referring to the ten-year bar on readmission that would apply after any departure or removal of an alien who was unlawfully present in the United States for one year or more. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II); *see also Cervantes-Ascencio v. INS*, 326 F.3d 83, 85-86 (2d Cir. 2003).

address the Olufunmis' proffered excuse for untimeliness or Oluwole's recent marriage, but he did address the merits of their ineffective-assistance claim and found that it was not supported by the record.

Ajani and Oluwole appealed, but the BIA dismissed, holding that the IJ properly refused to reopen. The BIA addressed the Olufunmis' argument that the letter of June 20 excused their untimeliness and held that the letter could not have provided any new information. The Olufunmis were already on notice that Ajani's visa application would likely be denied because they knew that the government considered Ajani's marriage to Yvonne fraudulent. The BIA also refused to grant Oluwole a remand to await approval of a visa petition filed by his new wife, finding that he had failed to submit prima facie evidence that the marriage was bona fide.

## Analysis

### I. Ineffective Assistance of Counsel

#### A. Equitable Tolling

First, the Olufunmis contend that the IJ should have tolled the 90-day time limit to file a motion to reopen based on their claim of ineffective assistance of counsel. We review a denial of a motion to reopen for abuse of discretion. *Awad v. Ashcroft,* 328 F.3d 336, 341 (7th Cir. 2003). Because the deadlines for motions to reopen are not jurisdictional, they are subject to equitable tolling, and ineffective assistance of counsel is a possible ground for tolling. *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005). To benefit from equitable tolling, however, the Olufunmis must show that they exercised due diligence and that they could not have been expected to file earlier. *Johnson v. Gonzales*, 478 F.3d 795, 799 (7th Cir. 2007). We rarely reverse a refusal to reopen for failure to equitably toll a deadline. *Id.*

To demonstrate that they exercised due diligence, the Olufunmis contend that the delay in filing the motion to reopen should be excused based on the bad advice of their original counsel. They claim that counsel failed in two ways: he did not inform them that by accepting voluntary departure they could be subject to a ten-year unlawful-presence bar—possibly under 8 U.S.C. § 1229c(d) or 8 U.S.C. § 1182(a)(9)(B)(i)(II)—and he "improperly discouraged" them from going to trial. According to the Olufunmis, they were not aware of the consequences of accepting voluntary departure until they received a letter from the Department of State on June 20, 2006, regarding Ajani's I-360 petition. This argument is difficult to credit as the letter said nothing about an unlawful-presence bar. It only informed Ajani's counsel that certain documents had been forwarded to Citizenship and Immigration Services. An argument that the letter put the Olufunmis on notice that Ajani's latest application for a change of status might be denied is unbelievable, but it is

also beside the point.  As the BIA noted, the Olufunmis had long been on notice that the government considered Ajani's marriage to be fraudulent.  But even if the letter somehow represented the first inkling that Ajani might not be made a citizen after all, it is hard to understand the link between this knowledge and a realization that counsel performed ineffectively in recommending voluntary departure.  In any event, the Olufunmis fail to explain any such link.

## B.  Merits of the Ineffectiveness Claim

Even if the Olufunmis should have had the benefit of equitable tolling, their claim of ineffective assistance of counsel is quite weak on the merits.  Before reaching the merits of the ineffectiveness claim, however, the government asks us to reexamine whether there is, in fact, a constitutional right to effective assistance of counsel in immigration proceedings.  No such reexamination is necessary as we have *already held* that there is no constitutional right to effective assistance of counsel in immigration proceedings.  *Magala v. Gonzales*, 434 F.3d 523, 525 (7th Cir. 2005).  Instead, relief for ineffective assistance of counsel arises solely from the BIA's discretion, which must be exercised "carefully and rationally."  *Id.* at 526; *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988).  The government does not challenge the BIA's discretionary authority to grant relief for ineffective assistance of counsel, nor does it challenge our jurisdiction to review such grants or, as here, denials.

In *Lozada*, the BIA recognized that claims of ineffective assistance of counsel are viable in immigration proceedings and set out four requirements for raising such claims.  *Id.* at 638-39.  Pursuant to *Lozada*'s first requirement, Oluwole's and Ajani's motions to reopen each included an affidavit setting forth the relevant facts.  These affidavits could be construed to also satisfy *Lozada*'s second requirement, which is to include a detailed description of the agreement entered into with former counsel.  But the Olufunmis did not comply with *Lozada*'s third requirement because they failed to include proof that they had informed their former counsel of the allegations and given him a chance to respond before they jumped to the fourth requirement by filing grievances with the Illinois Attorney Registration and Disciplinary Commission.  We have previously discussed the drawbacks of filing a grievance without first notifying counsel.  *Patel v. Gonzales*, 496 F.3d 829, 832 (7th Cir. 2007).  The Olufunmis' failure to satisfy the third *Lozada* requirement is an alternate basis on which the IJ and the BIA could have denied relief.  *See id.* at 833 (holding that BIA could dismiss based on failure to meet one of the *Lozada* requirements).

Instead, the IJ held that the record did not support a claim for ineffective assistance of counsel because counsel discussed the consequences of voluntary departure with the Olufunmis and reported to the IJ that they understood those consequences.  The BIA seemed to approve of this reasoning but may have

recounted the facts incorrectly, writing that Ajani and Oluwole did not "rebut the Immigration Judge's finding that [they] stated below, before accepting voluntary departure, that [they] understood the consequences of such acceptance." There is no evidence in the record that the Olufunmis themselves, as opposed to their attorney, stated to the IJ that they understood the consequences of voluntary departure. Rather, their argument is that their attorney mistakenly represented that they understood those consequences. As the government points out, however, there is no evidence in the record to support the Olufunmis' contentions.

But whether counsel truly was ineffective is irrelevant as there is yet another ground for affirming the BIA: the lack of prejudice from counsel's conduct. *See Pavlyk v. Gonzales*, 469 F.3d 1082, 1091 (7th Cir. 2006); *In re Assaad*, 23 I. & N. Dec. 553, 561 (BIA 2003). The Olufunmis state that they have shown prejudice, but as the government notes, they fail to explain why going ahead with the removal proceeding rather than accepting voluntary departure would have benefitted them. Despite their claim, made only in their brief and not supported by the record, that several witnesses would have vouched for the validity of Ajani's marriage, it is highly unlikely that the IJ would have found the marriage to be anything but fraudulent. INS agents had found convincing evidence—and the building manager confirmed—that Ajani was in fact living with his first wife, Grace, who he implausibly claimed was his sister. The IJ would almost surely have ruled against Ajani had he gone ahead with the hearing. The Olufunmis have failed, therefore, to show prejudice because they cannot show that they are "eligible for any relief from removal." *Assaad*, 23 I. & N. Dec. at 561.

## II. Oluwole's Marriage

Oluwole argues that the BIA erred when it refused to order a remand to await the outcome of his application to adjust status based on his marriage to Raliat Olufunmi, a United States citizen. The BIA has held that if certain factors are present, it may, "in the exercise of discretion," grant a properly filed motion to reopen by an alien who marries a United States citizen after the commencement of removal proceedings. *In re Velarde-Pacheco*, 23 I. & N. Dec. 253, 256 (BIA 2002). One of those factors is that "the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide." *Id.* The BIA here held that this factor was not satisfied by Oluwole's evidence: a photocopy of the marriage certificate, an affidavit from his spouse declaring the marriage to be bona fide, an unexecuted copy of a contract to open a joint bank account, and several photos. We review the BIA's denial of a motion to remand for abuse of discretion. *Uriostegui v. Gonzales*, 415 F.3d 660, 664 (7th Cir. 2005).

First, Oluwole contends that the BIA failed to properly consider his evidence of a bona fide marriage. This is not true—the board did consider Oluwole's evidence

but found it insufficient to establish that the marriage was bona fide.  Next, Oluwole contends that remand should have been granted because he submitted *more* evidence of a bona fide marriage than the alien in *Velarde-Pacheco*.  But this is also incorrect—the submissions in *Velarde-Pacheco* included evidence that the couple had lived together for several years, a marriage certificate, a birth certificate for the couple's United States citizen son, and an affidavit attesting that the alien had known his wife for several years.  *Velarde-Pacheco*, 23 I. & N. Dec. at 256.  As the BIA noted, Oluwole failed to submit any third-party evidence to show that he and his wife were living together or had commingled their assets.  By contrast, the evidence submitted by the alien in *Velarde-Pacheco* showed that he was living with his wife and that they had a son together.  Even if there is a slight possibility that a different BIA panel would consider Oluwole's evidence to demonstrate a high probability that his marriage is bona fide, *id.*, he has failed to show that the BIA abused its discretion.

## Conclusion

Because the BIA did not abuse its discretion in refusing to reopen or remand, we DENY the petitions.