NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 9, 2009
Decided August 11, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-3698

| | |
|---|---|
| SAMUEL ADEBISI AWE, et al., | Petition for Review of an Order of the |
| *Petitioners*, | Board of Immigration Appeals. |
| | |
| *v.* | Nos. A 026 734 256, A 029 451 756, |
| | A 029 451 754, A 029 451 757 |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Samuel Awe, his wife, and their two children, all citizens of Nigeria, petition for review of an order of the Board of Immigration Appeals denying their motion to reopen their removal proceedings. We dismiss the petition for lack of jurisdiction.

## Background

Awe's[1] contacts with the United States date back forty years to 1969, when he first entered the country on a student visa. He remained for most of the 1970s and eventually earned a Ph.D. in agriculture from the University of Wisconsin. Awe has long suffered from renal disease, for which he has received extensive treatment in this country. He received his first kidney transplant here in 1979 but, after returning to Nigeria, his body rejected the new organ, and so, in the late 1980s, he returned to the United States for dialysis and was placed on the waiting list for a donor kidney. Awe's wife, Julianah, and their children, Temitope and Oluwagbenga, then ages 3 and 5, respectively, joined him on six-year visitor visas in 1989.[2] Awe received a second kidney transplant the following year, and in 1992 he returned to Nigeria, where he served as Commissioner of Agriculture and Rural Development from late 1994 until his dismissal in June 1995. In August 1995 Awe, in need of dialysis (which he received three times a week until his third kidney transplant in 2006), returned to the United States on a three-month visitor visa, and never left. His wife and children, who had never left the United States since arriving in 1989 and whose visas likewise expired in November 1995, also overstayed.

In March 1998 Awe applied for asylum, listing his wife and children as derivative beneficiaries. Awe asserted that during his tenure as Commissioner of Agriculture, he had been persecuted on the basis of his political opinion, specifically that he had been fired because he refused to bribe his supervisors and had been accused of working for the CIA. The IJ denied Awe's asylum application, but granted voluntary departure. The IJ also acknowledged the "strong humanitarian elements" of Awe's case, but explained that he could not craft a remedy based on those elements alone. Awe appealed to the Board, but, after he failed to submit a supporting brief, the Board summarily dismissed his appeal in March 2002, and we affirmed the following year. *See Awe v. Ashcroft*, 324 F.3d 509 (7th Cir. 2003).

DHS granted the Awes an administrative stay of removal, *see* 8 C.F.R. § 241.6, ostensibly so Awe could continue to receive medical treatment, but the stay expired in July 2004, and the family nevertheless remained. Awe received a third kidney transplant in

---

[1]We refer to Samuel Awe, the lead petitioner, as Awe, and to his wife and children by their first names.

[2]Awe and Julianah have an older child, Olayemi, who lived with them in the United States until 2004, when the family's stay of removal expired. Olayemi, who was then 25, returned to Nigeria but, according to Awe, immediately fled to Canada when relatives tried to subject her to female genital mutilation.

2006, and he and his wife continued working as teachers in the Milwaukee public school system, as they had for the previous decade. Their son, Oluwagbenga, who is now 25, fathered a child with a United States citizen, whom he married in February 2008. The family went about their lives undisturbed until November 2007, when ICE officials advised them to sell their house because they would soon be deported.

In April 2008 Awe filed a motion to reopen before the Board, asserting that changed circumstances warranted reopening his family's removal proceedings. First, Awe asserted that his medical condition had worsened and he would not receive adequate treatment in Nigeria. Second, he asserted that, if his family were removed, his daughter and daughter-in-law (who, although she is a United States citizen, says she will follow the Awes to Nigeria) would be forced to undergo female genital mutilation. Finally, Awe sought reopening specifically for Oluwagbenga so he could adjust status on the basis of his marriage to a United States citizen. In support of the motion, Awe submitted a letter from a kidney specialist stating that removing Awe to Nigeria would be a "death sentence," and an affidavit from Dr. Lloyd Binagi, a University of Wisconsin-Whitewater historian specializing in African culture, who opined that Awe's family in Nigeria would insist that his daughter and daughter-in-law submit to female genital mutilation. Awe later supplemented his motion with a report from Dr. Rhea Steinpreis, a clinical psychologist, who opined that Awe suffers from post-traumatic stress disorder which caused him, when filing his original asylum application, to withhold details about the alleged persecution he suffered in Nigeria. Specifically, according to Dr. Steinpreis, the disorder kept Awe from revealing that his superiors in the Nigerian government had maliciously withheld medical treatment in order to coerce him into participating in government corruption. (Awe, however, has never submitted any affidavit of his own to this effect.)

The Board denied the motion. Because Awe filed the motion long past the 90-day deadline for motions to reopen, the Board explained, he was required to demonstrate changed circumstances in Nigeria that warranted reopening. *See* 8 C.F.R. § 1003.2(c). According to the Board, Awe's kidney disease was a personal circumstance, not a change in Nigeria. The Board also noted that Awe could not seek reopening on the ground that his daughter and daughter-in-law would be subject to female genital mutilation in Nigeria. With respect to reopening on the basis of Oluwagbenga's marriage, the Board concluded that the motion was untimely and that, in any event, reopening was not warranted because there was no evidence that Oluwagbenga had applied for adjustment of status or that his wife had petitioned for a visa on his behalf. Finally, the Board declined to exercise its discretion to sua sponte reopen the proceedings.

**Analysis**

Awe petitions for review, but, as the government points out, we lack jurisdiction to review the Board's discretionary decision to deny a motion to reopen unless the petition presents a legal question. *See Kucana v. Mukasey*, 533 F.3d 534, 535-38 (7th Cir. 2008), *cert. granted*, *Kucana v. Holder*, 77 U.S.L.W. 3594 (U.S. Apr. 27, 2009) (No. 08-911). A legal question arises when the Board misinterprets a statute, regulation, constitutional provision, or its own precedent, applies the wrong legal standard, or fails to exercise its discretion at all. *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009).

Awe raises several arguments on appeal, but none presents a legal question. He first asserts that the Board failed to adequately consider two pieces of evidence: first, Dr. Steinpreis's report opining that post-traumatic stress disorder prevented Awe from fully describing the harm he suffered in Nigeria when he first applied for asylum and, second, Dr. Binagi's affidavit stating that tribal custom would require Awe's daughter and daughter-in-law to undergo female genital mutilation upon the family's return to Nigeria. Awe's disagreement, however, with the weight the Board placed on various evidentiary items en route to its discretionary denial of his motion to reopen is beyond our review. *See Huang v. Mukasey*, 534 F.3d 618, 621 (7th Cir. 2008).

In light of the Supreme Court's decision to grant certiorari in *Kucana v. Holder*, 77 U.S.L.W. 3594 (U.S. Apr. 27, 2009) (No. 08-911), we add that if we had jurisdiction, we would conclude that the Board did not abuse its discretion in denying the motion. *See Singh v. Gonzales*, 404 F.3d 1024, 1027 (7th Cir. 2005). In order to warrant an exception to the 90-day deadline for motions to reopen, Awe had to present evidence of changed circumstances arising in Nigeria that was "material and was not available and would not have been discovered or presented at the previous proceeding." *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); *Chen v. Gonzales*, 498 F.3d 758, 759-60 (7th Cir. 2007). But evidence that post-traumatic stress disorder hindered Awe's effort to obtain asylum is not evidence of changed circumstances in Nigeria, and thus could not have triggered an exception to the 90-day deadline. If anything, the evidence might have supported an argument that the Board should equitably toll the 90-day deadline, *see Gao v. Mukasey*, 519 F.3d 376, 377 (7th Cir. 2008), but Awe never made that argument.

Nor does evidence that Awe's daughter and daughter-in-law would be forced to undergo female genital mutilation establish changed circumstances in Nigeria. Female genital mutilation is not new to Nigerian culture, *see, e.g., Nwaokolo v. INS*, 314 F.3d 303, 308-09 (7th Cir. 2002), and the threat that Awe's daughter would be subjected to this practice has always existed. Thus, even assuming that Awe, when presenting his *original*

asylum application, could have established a claim based on his fear that his daughter would be forced to undergo female genital mutilation, *see Abay v. Ashcroft*, 368 F.3d 634, 642 (6th Cir. 2004), his belated presentation of this evidence could not trigger an exception to the 90-day deadline for a motion to reopen, *see Krougliak v. INS*, 289 F.3d 457, 460 (7th Cir. 2002) (upholding Board's denial of motion to reopen where supporting evidence could have been presented with petitioner's original asylum application). And, although Awe's daughter-in-law was not part of the family when Awe filed his original asylum application, Oluwagbenga's marriage to her is merely a change in personal circumstances, *see Chen*, 498 F.3d at 759-60, and, in any event, she is a United States citizen under no compulsion to follow the family to Nigeria, *see Olowo v. Ashcroft*, 368 F.3d 692, 701 (7th Cir. 2004). Because Awe presented no evidence that anything *in Nigeria* has changed, the Board's decision could not be considered an abuse of discretion. *See Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005).

Awe next challenges the Board's refusal to reopen on the basis of Oluwagbenga's marriage to an American citizen, but again fails to raise a legal question. Awe does not assert that the Board applied the wrong legal standard, nor does he articulate any other legal challenge that might give rise to our jurisdiction. *See Johnson v. Mukasey*, 546 F.3d 403, 405 (7th Cir. 2008). But even if we had jurisdiction, Awe's argument would still fail. Like any other motion to reopen, a motion to reopen to adjust status based on marriage to a United States citizen must be filed within 90 days of the final administrative decision and be accompanied by the appropriate application for relief. 8 C.F.R. § 1003.2(c)(1). Because Awe's motion was untimely and included no evidence that an application for adjustment of status or a visa petition had been filed, the Board was well within its discretion to deny the motion.

Finally, Awe challenges the Board's refusal to sua sponte reopen his case, *see* 8 C.F.R. § 1003.2(a), but the Board's discretionary decision whether to sua sponte reopen proceedings is unreviewable, *see Johnson v. Gonzales*, 478 F.3d 795, 799 (7th Cir. 2007).

Although we must dismiss the petition for lack of jurisdiction (and would deny the petition if we had jurisdiction), we end by noting the exceptional humanitarian concerns presented by this case. Awe is nearly seventy years old, legally blind, and suffers from a debilitating condition for which he is unlikely to receive adequate treatment in Nigeria. He sees a kidney specialist monthly, an eye doctor weekly, and requires biweekly blood sampling to monitor his condition. He entered this country legally and has resided here for the greater part of the last forty years, has no criminal convictions, and has worked as a special-education teacher in Milwaukee public schools for over a decade. Awe's son, Oluwagbenga, who has lived in the United States since he was a young child, is now

married to a United States citizen; the legitimacy of their marriage has never been called into question and they have a three-year-old son, also a citizen. While we lack authority to influence the discretionary decisions of the immigration authorities, we respectfully suggest that the government consider these facts should the Awes seek "deferred action," a discretionary remedy that USCIS may grant on humanitarian grounds in exceptionally sympathetic cases. *See* Recommendation from the CIS Ombudsman to the Director, USCIS, Apr. 6, 2007, http://www.dhs.gov/xlibrary/assets/CISOmbudsman_RR_32_O_Deferred_Action_04-06-07.pdf (last visited June 9, 2009); *see also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001).

## Conclusion

The petition is **DISMISSED** for lack of jurisdiction.