**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN CARLOS TAPIA LUNA,
                                   *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                                   *Respondent.*

No. 08-71086

Agency No.
A092-317-989

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 7, 2011—Pasadena, California

Filed September 19, 2011

Before: Pamela Ann Rymer, Consuelo M. Callahan, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Callahan

17775

## COUNSEL

Gary H. Maunulkin, and Reyna M. Tanner (argued), Fountain Valley, California, for the petitioner.

Michael F. Hertz, Acting Assistant Attorney General, Terri J. Scadron, and Corey L. Farrell (argued), Washington D.C., for the respondent.

**OPINION**

CALLAHAN, Circuit Judge:

In both this appeal as well as in *Rodriguez-Sanchez v. Holder*, No. 07-71014, which we dispose of in a separate memorandum disposition filed simultaneously with this opinion, the petitioners seek, inter alia, to reopen their immigration proceedings by raising challenges to, or seeking an exception to, the April 26, 2005, deadline to seek relief under former section 212(c) of the Immigration and Nationality Act ("INA") established by 8 C.F.R. § 1003.44 ("Special motion to seek section 212(c) relief for aliens who pleaded guilty or nolo contendere to certain crimes before April 1, 1997"). We hold that § 1003.44's deadline to file special motions to reopen is a constitutionally-sound procedural rule and that absent some exceptional circumstances, not present here, petitioners that miss the deadline are not entitled to relief from that deadline.

**I**

Because the petitioner's contentions turn, in part, on the evolution of the availability of § 212(c) relief, we first briefly review that history. The Immigration Act of 1917 ("1917 Act") excluded from admission into the United States several classes of aliens, "including . . . those who had committed crimes 'involving moral turpitude.' " *INS v. St. Cyr*, 533 U.S. 289, 294 (2001) (quoting 39 Stat. 875). The Attorney General, however, was given discretion to admit an otherwise excludable alien where the alien was returning after a temporary absence to an unrelinquished domicile of seven years. *Id.*

The Immigration and Nationality Act of 1952 ("INA") replaced the 1917 Act, but retained the 1917 Act's moral turpitude exclusion and also retained, in INA § 212(c), the Secretary of Labor's discretionary authority to admit an otherwise excludable alien where the alien was returning after a tempo-

rary absence to an unrelinquished domicile of seven consecutive years. *Id.* at 294-95. Congress subsequently transferred this authority to the Department of Justice, and thus, the Attorney General. *Id.* at 294. Specifically, from its enactment in 1952 through 1990, § 212(c) of the INA gave the Attorney General broad discretion to admit an otherwise excludable alien if the alien temporarily departed the United States voluntarily and sought to return to " 'lawful unrelinquished domicile of seven consecutive years.' "[1] *Id.* at 295 (quoting § 212(c)).

From 1990 to 1995, Congress limited the Attorney General's discretion and narrowed the availability of § 212(c) relief by denying waivers of exclusion of admissibility to felons who had served a term of imprisonment of at least five years. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 511, 104 Stat. 4978, 5052 (1990).[2] When the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted on April 24, 1996, Congress further restricted the scope of § 212(c) relief by denying it to any alien who had been convicted of an aggravated felony or crimes of moral turpitude.

---

[1]The 1990 version of § 212(c); 8 U.S.C. § 1182(c), provided, in full, that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) to (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

[2]Amending 8 U.S.C. § 1182 to read:

> (a) IN GENERAL.—Section 212(c) (8 U.S.C. 1182(c)) is amended by adding at the end the following: "The first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years."

*See* AEDPA, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (1996).

Furthermore, when the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was enacted, § 212(c) relief was replaced by the narrower form of relief, cancellation of removal. *See* IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009-1, 3009-594 (1996). Cancellation of removal, as established by § 240A of IIRIRA, permits the Attorney General to "cancel removal of an alien who has been a lawful permanent resident for not less than five years, has resided continuously in the United States for seven years after having been admitted, and 'has not been convicted of any aggravated felony.' " *Becker v. Gonzales*, 473 F.3d 1000, 1003 (9th Cir. 2007) (quoting IIRIRA § 240A(a), 8 U.S.C. § 1229b(a)).

However, in 2001, the Supreme Court held that § 212(c) relief remained available to aliens who pleaded guilty to waivable criminal offenses before IIRIRA's effective date in reliance on the availability of § 212(c) relief. *St. Cyr*, 533 U.S. at 326 (holding that "§ 212(c) relief remains available for [petitioners] . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect"). On September 28, 2004, the Department of Justice's Executive Office for Immigration Review ("EOIR") issued a final rule regarding procedures and deadlines for filing motions to reopen to apply for § 212(c) relief based on the Supreme Court's decision in *St. Cyr*. *See* 69 Fed. Reg. 57826-01, 2004 WL 2155250. The final rule became effective on October 28, 2004 and set a deadline of April 26, 2005 to file a special motion to reopen for § 212(c) relief. *See id.*; 8 C.F.R. § 1003.44(h).

Against this background, we turn to the facts and allegations at issue in this petition.

## II

Juan Carlos Tapia Luna ("Tapia") is a native and citizen of Mexico who was admitted to the United States on or about May 21, 1990 as an immigrant. In September of 1993, Tapia was convicted in a California state court after pleading guilty to receiving stolen property in violation of Section 496(a) of the California Penal Code. He was sentenced to one year and four months in prison. Because of this conviction, on December 1, 2000, the former Immigration and Naturalization Service ("INS") commenced removal proceedings against him. Tapia was charged with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(I), for having committed a crime of moral turpitude within five years of admission, and for having been convicted of an aggravated felony offense.

On December 11, 2000, the Immigration Judge ("IJ") found Tapia removable as charged. Tapia did not apply for relief from removal, waived his right to appeal, and was ordered removed to Mexico. Although Tapia claims that he never actually left the United States, his departure was witnessed by a deportation officer in December 2000.

On an unknown date after being removed, Tapia appears to have illegally reentered the United States. In February of 2007, Tapia, through the law firm that represents him in this petition: (1) paid the filing fee for a motion to reopen his immigration proceedings; and (2) filed an I-191 form, Application for Advance Permission to return to Unrelinquished Domicile, in which he asserted he had maintained residences in California from 2001 through the date the I-191 form was filed.[3] Tapia thereafter filed the motion to reopen in August of 2007.

---

[3]Tapia claimed that he lived in La Puente, California, from 2001 to 2003 and Valinda, California, from 2003 through the date of the application. In the same form, Tapia indicated he had never departed the United States.

In his August 2007 motion, Tapia argued that in the December 2000 removal proceeding the IJ violated his due process rights by not advising him of his right to seek § 212(c) relief.[4] Tapia recognized that he had missed the April 26, 2005 deadline for filing a special motion to reopen to request § 212(c) relief, but sought equitable tolling of the deadline and an order estopping the government from removing him.

Regarding his eligibility for § 212(c) relief, Tapia alleged that he was eligible in 2000 because by then he had over seven years of domicile in the United States and he had not been charged with an aggravated felony. He argued that the IJ erred in failing to advise him of his eligibility for § 212(c) relief, and therefore, equitable tolling of the deadline for filing a motion to reopen was proper. He also asserted that his failure to file a special motion to reopen by the April 26, 2005 deadline should be equitably tolled because he was not informed of his right to seek § 212(c) relief by his counsel until approximately July 31, 2006, and he then filed the motion to reopen within 90 days of that date.

The IJ denied Tapia's motion to reopen on October 22, 2007. Although the motion was styled as a motion to reopen to the BIA, because the thrust of Tapia's argument was that he was entitled to § 212(c) relief, the IJ treated Tapia's motion as a special motion to reopen. The IJ first found that Tapia's claim that he had not been charged as an aggravated felon was clearly in error, and that Tapia was removable based on both his aggravated felony conviction and the fact that receiving stolen property is a crime of moral turpitude. In addition, the IJ determined that there was no affirmative misconduct by the IJ in 2000, noting that Tapia was not eligible for § 212(c) relief at that time because he was not given permanent legal resident status until May 1990, and thus had not accrued the

---

[4]The same IJ presided over both Tapia's 2000 and 2007 proceedings.

requisite seven years of domicile in 1993 when he entered his plea.

The IJ also concluded that Tapia was not eligible for § 212(c) relief at the time of his removal hearing in 2000 because § 212(c) had been repealed. Further, the IJ concluded that he could not have informed Tapia of the motion to reopen filing deadline in 2000 because the regulation establishing that time limit had not yet been promulgated. Also, the IJ noted that denial was warranted because, although Tapia denied it, if what Tapia indicated in his I-191 form was true, he illegally reentered the United States shortly after he was removed in 2000.

Finally, the IJ denied Tapia's motion to reopen on the basis that it was untimely. Tapia missed the April 26, 2005, deadline for filing a special motion to reopen because he did not file a motion until August of 2007. The IJ rejected Tapia's assertion that he filed his motion to reopen within 90 days of learning of his right to seek relief from his counsel. The IJ, noting numerous errors in Tapia's motion, determined that Tapia may have misstated the date he learned of his eligibility for § 212(c) relief. Tapia's motion asserted that Tapia learned of this right to relief on July 31, 2006, but the IJ noted that Tapia paid the fee to file the motion to reopen in February of 2007, then filed the motion to reopen in August of 2007, and that neither of these dates was within 90 days of July 31, 2006.

Tapia timely appealed to the BIA, which conducted its own review and dismissed his appeal on February 19, 2008. Like the IJ, the BIA considered Tapia's motion as a special motion to reopen. The BIA first rejected Tapia's due process argument that the IJ that ordered him removed in 2000 engaged in affirmative misconduct (and therefore equitable tolling was warranted) by failing to advise Tapia that he was eligible for § 212(c) relief. Like the IJ, the BIA found that Tapia had not met § 212(c)'s seven-year residency requirement, and that the

time limit for filing a special motion to reopen for § 212(c) relief had not yet been established. The BIA also concluded that Tapia missed the April 26, 2005 filing deadline and that there was no basis for equitable tolling as (1) the IJ did not err by failing to advise Tapia he was eligible for § 212(c) relief, and (2) Tapia had not demonstrated that he had exercised due diligence in discovering the deadline. Furthermore, the BIA noted that Tapia had not offered any new facts that were unavailable at the time of the removal hearing, and was otherwise ineligible because he had been removed in December of 2000.

Tapia then timely petitioned this court for review.

## III

"This court reviews BIA denials of motions to reopen for abuse of discretion." *Iturribarria v. INS*, 321 F.3d 889, 894 (9th Cir. 2003). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to the law." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) (quoting *Lainz-Ortiz v. INS*, 96 F.3d 393, 395 (9th Cir. 1996).

Here, Tapia contends that: (a) in 2000, the IJ violated his due process rights and engaged in affirmative misconduct by failing to advise him that he was eligible for § 212(c) relief; (b) whether or not the IJ erred in his § 212(c) determination, Tapia was entitled to equitable tolling of the deadline for filing a special motion to reopen; and (c) § 1003.44 is unconstitutional on its face and as applied to him. We find none of Tapia's arguments persuasive.

First, even assuming that Tapia "relied" on the availability of § 212(c) relief when he pleaded guilty, and was therefore eligible for § 212(c) relief, he missed the deadline for filing a motion to reopen and we find no basis here for extending equitable tolling of the April 26, 2005 deadline for special motions to reopen based on any error by the IJ. Second, even

assuming that Tapia has not waived his challenge to the constitutionality of § 1003.44, the regulation is not unconstitutional; rather, it provides due process in the form of a remedy to those aliens who were denied the § 212(c) relief that they were entitled per *St. Cyr.* Finally, we find no basis for equitable tolling of the April 26, 2005 deadline, given that he failed to file his motion to reopen within 90 days of when he knew or should have known of his claim.

## A

Tapia asserts that he is entitled to tolling of the April 26, 2005 deadline for filing special motions to reopen for § 212(c) relief and of the 90-day deadline for motions to reopen because the IJ in 2000 violated his due process rights and engaged in affirmative misconduct by failing to advise Tapia that he was eligible for § 212(c) relief. While we have deep reservations as to whether Tapia was entitled to be advised by the IJ as to the availability of § 212(c) relief in 2000 because § 212(c) relief had been repealed and *St. Cyr* had yet to be decided, we do not need to reach that issue. Even assuming that the IJ's failure to advise Tapia of his eligibility for § 212(c) relief tolled the deadline for filing a motion for § 212(c) relief, Tapia still failed to file his motion to reopen in a timely manner.

Equitable tolling may apply "when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Iturribarria*, 321 F.3d at 897; *see also Singh v. Gonzales*, 491 F.3d 1090 (9th Cir. 2007) (to warrant equitable tolling of a filing deadline, the petitioner must show that he has acted with due diligence). In particular, equitable tolling will apply "where, despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (internal quotations omitted).

**B**

Assuming that the IJ's failure to advise Tapia of his right to § 212(c) relief tolled the time for filing a motion to reopen, Tapia's first challenge is to show that the time for filing such a motion did not expire on April 26, 2005, pursuant to § 1003.44. Tapia contends that § 1003.44, which established the procedures for filing motions to reopen to apply for § 212(c) relief, and set a deadline of April 26, 2005 to file a special motion to reopen, is unconstitutional on its face and as applied to him.

Tapia asserts that § 1003.44 is unconstitutional on its face because "it irrationally disallows any alien not made aware of the time limitation from seeking a reopening" and because it did not require the government to notify aliens of their right to seek reopening. Tapia also argues that the regulation is unconstitutional as applied to him because the IJ did not notify him of his right to seek reopening.

**[1]** Section 1033.44 was enacted into law in 2004 and the April 26, 2005, deadline for filing special motions to reopen was set for approximately a year and a half later. The law was enacted by Congress and the regulation was published in the Federal Register. Tapia does not explain why this was a constitutionally insufficient notification and offers no case law to support this contention. The Supreme Court has stated that "the INA provides that [t]he Attorney General shall be charged with the administration and enforcement of the statute and that the determination and ruling by the Attorney General with respect to all questions of law shall be controlling." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (quoting 8 U.S.C. § 1103(a)(1) (1994 ed., Supp. III)) (internal quotations omitted). Furthermore, "Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947). Because Tapia

had sufficient notice of the deadline for relief, he cannot claim his due process rights were violated due to lack of notice.

**[2]** We also reject Tapia's argument that EOIR could not constitutionally set a deadline for the relief provided by *St. Cyr*. We hold that the April 26, 2005, deadline was a proper procedural rule made by the EOIR and entitled to deference. In doing so, we agree with the Seventh Circuit's reasoning in *Johnson v. Gonzales*, 478 F.3d 795, 799 (7th Cir. 2007). In *Johnson*, the Seventh Circuit held that the deadline was proper under a grant of authority to the Attorney General under the INA, noting "in general, the formulation of procedures is left to the discretion of the agencies with responsibility for substantive judgements." *Id.* (citing *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978)). When the EOIR enacted § 1003.44, it did not eliminate relief; it simply established a time frame in which relief under this theory was to be requested. *See* 8 C.F.R. § 1003.44(h). The *Johnson* court found that the deadline was made within the "reasonable rule-making authority of the Attorney General," and that such deadlines were common in other areas of procedural law. *Johnson*, 478 F.3d at 799-800. We agree, and see no basis for Tapia's argument that due process requires an alien who is not notified of the alien's right to § 212(c) relief be permitted to seek such relief "at any time."

**[3]** Section 1033.44 was enacted by the Attorney General on the basis of the Supreme Court's decision in *St. Cyr* and published in the Federal Register, so the deadline was presumptively constitutional and all aliens were therefore also presumptively deemed to have been given notice of the deadline. Tapia does not present a compelling argument to the contrary. Moreover, to the extent that his complaint is that he and other similarly-situated aliens were ignorant of the deadline, Tapia runs afoul of the rule that ignorance of the law is not an excuse where one has constitutionally sufficient notice. *See, e.g.*, *United States v. Clark*, 435 F.3d 1100, 1109 n.13 (9th Cir. 2006).

## C

**[4]** Even if we were to assume that Tapia's failure to comply with the April 26, 2005, deadline for filing special motions to reopen could be excused based on an equitable tolling theory, there is no ground to equitably toll the filling deadline here because Tapia has not shown due diligence. *See Socop-Gonzalez*, 272 F.3d at 1193 ("we will apply equitable tolling in situations where, despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim.") (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) (internal quotation marks omitted). Tapia's assertion that he filed his August 2007 motion to reopen within ninety days of learning of his right to § 212(c) relief is not supported by the record. Citing *Iturribarria*, 321 F.3d at 897-99, Tapia asserts he is entitled to tolling of the period for filing special motions to reopen because the IJ did not advise him of his right to seek § 212(c) relief and he only learned of his right from his attorney within 90 days of the filing of his motion to reopen in August of 2007.[5]

**[5]** Tapia, however, acknowledges that, through counsel, he paid the fee to file a motion to reopen in February 2007, but he did not actually file his motion to reopen until August 30, 2007, more than six months later. Given that Tapia, through counsel, clearly anticipated the filing of a motion to reopen in February, 2007, there is no excuse for his failure to file his motion to reopen within 90 days of February 2007.

---

[5]Tapia contends that his statement, in his motion to reopen to the BIA, that he learned of his right to seek § 212(c) relief "on or about July 31, 2006" was a typographical error. He asserts that he was actually informed of his eligibility for § 212(c) relief after he hired counsel to review his case in 2007, although he does not provide a specific date when this occurred. Furthermore, there is no affidavit or declaration, from either Tapia or his attorney, specifying when Tapia retained counsel, or allegedly learned of his eligibility for § 212(c) relief.

## CONCLUSION

**[6]** We hold that the BIA did not abuse its discretion in denying Tapia's petition. Even assuming that Tapia was entitled to rely on the availability of § 212(c) relief when he pled guilty in 1993, and that he achieved the requisite seven years of unrelinquished domicile by the time of his removal proceedings in 2000, Tapia still had the burden to establish that he was entitled to equitable tolling of the deadlines for a special motion to reopen for *St. Cyr* relief or a motion to reopen. We hold that Tapia has not made a compelling showing. We hold that § 1033.44 is a constitutionally sound regulation that provides due process in the form of a remedy to those aliens that were denied § 212(c) relief to which they were entitled under *St. Cyr*, but that Tapia failed to demonstrate that he exercised due diligence in discovering the deadline for filing a special motion to reopen and is not otherwise entitled to tolling of the deadline for a motion to reopen. *See Iturribarria*, 321 F.3d at 897-98.

**DENIED.**