NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued November 13, 2012
Decided January 31, 2013

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1596

| | |
|---|---|
| BEI JIANG,<br> *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A077 341 340 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br> *Respondent*. | |

### O R D E R

Bei Jiang, a Chinese male, petitions for review of the Board of Immigration Appeals' denial of his motion to reopen removal proceedings so that he could present new evidence of his conversion to Catholicism and the ineffective assistance he received from the lawyer who handled his removal proceedings. Jiang had based his original asylum application on the different theory that he feared future persecution for having fathered a child out of wedlock in China. Because Jiang's motion to reopen was untimely, we deny the petition.

Jiang, now 38, arrived in the United States in 2000 at Los Angeles International Airport but could not provide customs officials with a valid entry document and soon found himself in removal proceedings. At a hearing before an immigration judge, Jiang conceded that he was removable as charged, but asked for asylum, telling the IJ that he fled China facing imprisonment for having a child out of wedlock and feared persecution if he returned to his home province of Fujian. The IJ found his story not credible due to

inconsistencies in the record about the age of the child's mother at the time of the birth, the couple's inability to pay the fine for having a child out of wedlock, and the circumstances by which Jiang hid his son's birth from local authorities. Accordingly the IJ denied the application for asylum, withholding of removal, and protection under the Convention Against Torture.

Jiang appealed the IJ's decision to the Board of Immigration Appeals, but his counsel's brief in support of the appeal was cursory, and the Board summarily affirmed. Jiang then petitioned to this court, which dismissed his case under Federal Rule of Appellate Procedure 28(a)(9) for failure to develop a legal argument in his brief. *See Jiang v. Ashcroft*, No. 03-3918 (7th Cir. Apr. 22, 2004). We disbarred Jiang's counsel shortly after. *In re Attorney Li Nan Chiang*, No. D-04-0011 (7th Cir. June 30, 2004).

Despite the removal order, Jiang remained in the United States, and in 2011, with new counsel, he moved to reopen his removal proceedings so that he could present new evidence of his recent conversion to Catholicism, China's persecution of Catholics, and his prior counsel's ineffectiveness. Jiang attached an affidavit stating that he had given up hope of obtaining asylum after we dismissed his petition and his previous counsel told him that his case was "dead." In his affidavit Jiang also stated that in 2011 he hired new counsel who exposed the mistakes of his predecessor, but offers no explanation for his delay in seeking a second opinion.

The Board denied the motion as untimely. First, Jiang's request to reopen his case to present evidence of ineffective assistance was filed more than 90 days after his final order of removal. The Board observed that while an ineffective assistance claim can allow that deadline to be equitably tolled, such tolling was not appropriate in Jiang's case, as he had not exercised due diligence in seeking new counsel after the denial of his original application. Even if Jiang's motion to reopen had been timely, the Board added, he had not shown that his case was prejudiced by his counsel's mistakes—the adverse credibility finding had stemmed from inconsistencies in Jiang's own testimony before the IJ. Second, the Board concluded that Jiang's motion to reopen to present evidence of religious persecution was also untimely. The Board considered that Jiang might be arguing that his untimeliness was excused by changed country conditions, but concluded that Jiang's conversion to Catholicism was a change in his personal circumstances, not a changed country condition. And in any event, the Board observed, Jiang had not established that circumstances in China had worsened for Catholics since his removal proceedings in 2002.

Jiang challenges the denial of the motion to reopen, and maintains that his untimeliness in presenting evidence should be excused on the basis of equitable tolling. But "[i]n order to succeed on a claim for equitable tolling, a petitioner must demonstrate due diligence." *El-Gazawy v. Holder*, 690 F.3d 852, 859 (7th Cir. 2012); *see also Johnson v. Gonzales*,

478 F.3d 795, 799 (7th Cir. 2007). We see nothing in the record that could justify a six-year delay in seeking new counsel. In any event, Jiang never offered the Board an explanation for why he waited so long, and the argument is thus waived on appeal. *See Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009).

Jiang also appears to renew his argument that his untimeliness should be excused because of changed country conditions—namely, China's stepped-up persecution of Catholics who practice in underground churches. Although it is true that motions to reopen based on changed country conditions are exempt from the 90-day deadline, *see* 8 U.S.C. § 1229a(c)(7)(C)(ii); *Liang v. Holder*, 626 F.3d 983, 987–88 (7th Cir. 2010), the Board correctly noted that Jiang's argument was based on changed personal conditions and thus did not excuse the untimeliness of his motion to reopen, *see Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007). "It makes no sense to allow an alien who manages to elude capture by the immigration authorities for years after he has been ordered to leave the country, and has exhausted all his legal remedies against removal, to use this interval of unauthorized presence in the United States to manufacture a case for asylum." *Id.*; *see also Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005). In any event, while Jiang's documentary evidence—governmental reports and news accounts—concerns the recent persecution of some Catholics in China, particularly those who practice in underground churches, these submissions do not suggest that the persecution has worsened since 2002. *See Liang*, 626 F.3d at 991; *Lin v. Mukasey*, 532 F.3d 596, 599 (7th Cir. 2008).

DENIED.